Bigelow *v.* Benton.

I think there was no error committed on the trial, and that the judgment rendered at the circuit should be affirmed.

Judgment affirmed.

[ALBANY GENERAL TERM, September 6, 1852. *Parker, Wright* and *Harris*, Justices.]

---

BIGELOW and others *vs.* BENTON.

The terms of a guaranty must be strictly complied with, or the guarantor will not be bound. It is a claim *strictissimi juris*

Thus, where B. guarantied the shipment and delivery to the plaintiffs, at Troy, by D., of a barrel of flour for every four and an half bushels (270 pounds) of good wheat which he should receive of them, and a barrel of corn meal for every 240 pounds of Indian corn received from them; and the plaintiffs, in consideration of the guaranty, entered into an agreement with D., by which they stipulated that D. might, from time to time, give orders to their agents, at Buffalo and elsewhere, to purchase, on the plaintiffs' account, wheat and corn, to be consigned to the care of D., to manufacture for them; and such agreement bound D. to deliver a barrel of flour for a less quantity of wheat than was required by the contract of guaranty, and required that the corn meal delivered should be "kiln dried," which was not contemplated by the guaranty, and such agreement varied from the guaranty in other respects; *Held,* that B. was exonerated from liability upon his contract of guaranty.

THIS was an action of assumpsit, brought upon the following contract, in writing:

" *Little Falls, May* 15*th,* 1847.

" Messrs. Bigelow, Moore & Taylor, Troy:

"Gentlemen—Mr. Rodney Durkee informs me that he *is negotiating* with you to purchase and supply wheat and corn to stock his mill, in this village, the ensuing season. In fur-

therance of *such* an arrangement, *to be made* between you and said Durkee, I, for value received, hereby guarantee the shipment and delivery to you, at Troy, by said Durkee, of a barrel of flour, superfine, for every four and a half bushels (two hundred and seventy pounds) of good wheat he receives from you; also, of a barrel of corn meal for every two hundred and forty pounds of Indian corn so received by him.

" This guarantee is to cover what purchases of wheat and corn you may make to stock said Durkee's mills, the present season, unless revoked, as herein provided; but this guarantee shall not be construed and taken to cover, at any one time, over the flour and meal delivered to you, two canal boat loads of wheat and one canal boat load of corn. I hereby reserve to myself the right and privilege of revoking and rescinding this guarantee, on giving you fifteen days notice thereof; and this guarantee is hereby given, upon the express condition, that the wheat and corn, purchased by you for the purposes aforesaid, is not to be sold by you to said Durkee, but he is to receive and manufacture the same into flour and meal on your account.

" This stipulation is deemed proper to guard against the casualties incident to human life.          N. S. BENTON."

The cause came on for trial at the Rensselaer circuit, in February, 1849, held by Hon. Ira Harris; and it was agreed by the counsel for the respective parties, that the cause should be and the same was tried before his honor, Justice Harris, without empanneling a jury. The counsel for the plaintiffs gave in evidence the contract executed by the defendant, above set forth. It was further proved, on the part of the plaintiffs, that William Stimpson, of Buffalo, the agent of the plaintiffs, pursuant to orders given by said Rodney Durkee, purchased five boat loads of good Ohio and Michigan wheat, which he consigned to Durkee, at Little Falls, subject to charges of toll and freight, between the 8th of June and the 8th of November, 1847, and drew on the plaintiffs for the cost thereof, including the agent's commissions on the purchase, the elevation of the wheat, and the discount on the drafts; and that the quantity of wheat thus purchased and consigned, amounted to about twelve thousand one hundred and seventy-

two bushels.   It was also proved, that James Platt, of Oswego, purchased, pursuant to orders given by said Durkee, between the 7th of June and 16th of November, 1847, six boat loads of good Ohio and Michigan wheat, amounting to about thirteen thousand seven hundred bushels, which he consigned to said Durkee, at Little Falls, subject to charges for toll and freight; and that Durkee drew on the plaintiffs for the price of said wheat, including the agent's commissions on the purchase, the elevation of the wheat, and the discount on the drafts.   It was also proved, that Durkee, on the 14th October, 1847, purchased of Durkee, Galt & Co., one boat load of Genesee wheat, amounting to about one thousand nine hundred and sixty-three bushels, which was delivered at his mill, in Little Falls, for the price of which Durkee drew on the plaintiffs, including the interest on said draft. It was also proved, that the wheat thus received by Durkee, weighed from fifty-seven to fifty-nine pounds to the measure bushel; and amounted, in the aggregate, to twenty-seven thousand six hundred and eighty-nine bushels and ten pounds, at sixty pounds to the bushel.   It was also further proved, on said trial, on behalf of the plaintiffs, that the said Durkee, at various times between the 11th of June, 1847, and the 30th of December following, delivered to the plaintiffs, at Troy, five thousand two hundred and fifteen barrels of superfine flour.   Also, that Durkee advanced, in payment of freight on said wheat, delivered by the plaintiffs, the sum of twenty-seven hundred and thirty dollars and thirty-four cents; and that the plaintiffs advanced in payment of freight upon the said flour, delivered to them at Troy, the sum of eight hundred and twenty-five dollars and twenty-six cents; and that Durkee paid thereon, for freight, the sum of eleven hundred ninety-two dollars and twenty-six cents.   The plaintiffs further gave in evidence a contract, of which the following is a copy:

"This agreement, made this eighteenth day of May, 1847, between Bigelow, Moore & Taylor, of Troy, of the first part, and Rodney Durkee, of Little Falls, witnesseth: That the party of the first part, in consideration of a letter of guarantee of the party of the second part, dated Little Falls, May 15, 1847, signed by N. S. Benton, do hereby agree that the said party of

Bigelow *v.* Benton.

the second part may, from time to time, give orders to our agents, at Buffalo and elsewhere, to purchase, on the account of the party of the first part, wheat and corn, to be consigned to the care of the party of the second part, at Little Falls, to manu- facture for the party of the first part, as follows : For wheat weighing 57 to 58 lbs. to the measure bushel, a barrel of flour for every $4\frac{44}{60}$ bushels of wheat; and when weighing $59\frac{1}{2}$ lbs. and over, to the measure bushel, a barrel of flour for every $4\frac{39}{60}$ bushels of wheat; and a barrel of kiln dried corn meal for every two hundred and forty pounds of corn so received; the party of the second part is to ship, to the party of the first part, the flour and meal as fast as made at his mill.

" The party of the first part are to keep an accurate account of all sales of the flour and meal so shipped by the party of the second part, and render the same to the party of the second part, as often as any one lot or cargo of meal and flour is sold.

" The party of the first part are to deduct from the gross sales of the flour and meal, so forwarded by the party of the second part, the commissions for the purchasing of the wheat and corn, the commissions for selling the flour and meal, and the amount of the purchase money paid by them for the wheat and corn, and all cooperage and other just and customary charges ; and the balance, after deducting the aforesaid costs and charges from the gross sales of the flour and meal, is to be paid over to the party of the second part, by the party of the first part, as full and satis- factory payment for the services, expenses and use of the mill, of the party of the second part, in manufacturing meal and flour.

" The party of the second part is to direct and order when to purchase the wheat and corn, and to limit the price to be paid ; and is also restricted from giving his order for more than two canal boat loads of wheat and one of corn, at any one time, over and above the flour and meal shipped and delivered to the party of the first part.

" In testimony whereof, we have subscribed our respective names this day and year before written.

" RODNEY DURKEE,

" BIGELOW, MOORE & TAYLOR."

It was proved, on the part of the defendant, that the plaintiffs, from time to time, rendered their accounts to Durkee, in which they debited him with the amount of the drafts drawn on them by their agent, Stimpson, and by Durkee, for the purchase of the wheat and the amount they paid for freight on the flour, and credited him with the amount of the sales of the flour, deducting from the gross sum thereof the charges for its inspection, cartage, cooperage, insurance, and their commissions of two and one-half per cent for the sale thereof, and claimed a balance of $1405,06, as due to them under their said contract with Durkee.

It was also proved, on the part of the defendant, that after all the wheat was received by Durkee, he delivered to the plaintiffs, at Troy, over eleven hundred barrels of flour, and more than two boat loads of wheat would make. On this state of facts, the court delivered its opinion, and declared that the agreement of the 15th of May, 1847, entered into between the plaintiffs and the defendant, as proved in the case, was a contract of guarantee, that Durkee was the principal and the defendant the guarantor; that although the testimony showed a fulfillment, by the plaintiffs, of all the express conditions of the defendant's contract, yet the variance between the defendant's contract and the contract with Durkee, dated the 18th of May, 1847, was fatal to the plaintiffs' right of recovery, and he should direct a verdict for the defendant. To all and every part of which opinion and decision the counsel for the plaintiffs excepted, and insisted, 1st. That the undertaking of the defendant was an original and independent agreement, subject only to such conditions as were expressly stated, and that all these had been fulfilled. 2d. That the contract of Durkee was silent as to the proportions of flour to be rendered for wheat, where the wheat delivered weighed between fifty-eight and fifty-nine and a half pounds to the measured bushel, and that in such case the defendant's contract should be resorted to, to furnish the proportions ; and that the plaintiffs were entitled to a verdict for the amount of flour manufactured from wheat weighing from fifty-eight to fifty-nine and a half pounds to the measured bushel, which should thus be found deficient. But his honor, the circuit judge, decided against

---

Bigelow *v*. Benton.

---

the plaintiffs on each of the foregoing propositions; to which decisions the counsel for the plaintiffs severally excepted. And judgment being rendered in favor of the defendant, the plaintiffs, upon a case, moved for a new trial.

*John Van Buren*, for the plaintiffs.

*J. A. Spencer*, for the defendant.

*By the Court*, PARKER, J. The contract on which this suit is brought was clearly a contract of guaranty. It was so declared upon its face, and such is its import. It was made with reference to a negotiation then pending between the plaintiffs and Durkee. The defendant prescribed the precise terms and conditions of his guaranty, and no rule is better settled than that the terms of the guaranty must be strictly complied with, or the guarantor will not be bound. It is a claim *strictissimi juris*. (*Miller* v. *Stewart*, 9 *Wheat*. 680. *Wright* v. *Johnson*, 8 *Wend*. 512. *Walsh* v. *Bailie*, 10 *John*. 180. *Birckhead* v. *Brown*, 5 *Hill*, 634. *Hunt* v. *Smith*, 17 *Wend*. 179. *Dobbin* v. *Bradley*, *Id*. 422. *Walrath* v. *Thompson*, 6 *Hill*, 540.)

The defendant guarantied the shipment and delivery to the plaintiffs at Troy, by Durkee, of a barrel of superfine flour for every four and a half bushels (two hundred and seventy pounds) of good wheat he received from them; and a barrel of corn meal for every two hundred and forty pounds of Indian corn received from them. To make this contract of guaranty available, the agreement between the plaintiffs and Durkee should have corresponded precisely with it. But it differed essentially. It bound Durkee to deliver a barrel of flour, for a less quantity of wheat than was required by the contract of guaranty, and it required that the corn meal delivered should be "kiln dried," which was not contemplated by the guaranty.

The guaranty declared that it was given upon the express condition that the wheat and corn should not be sold by the plaintiffs to Durkee, but that he was to receive and manufacture them into flour and meal, on the plaintiffs' account. The title

to the grain was to remain in the plaintiffs, and the guarantor was to be responsible only for the faithful return by Durkee of the flour, in the proportions and according to the terms of the guaranty. (It was manifestly important to the guarantor that his principal should be subjected to no hazard.) Yet, by the terms of the subsequent agreement between the plaintiffs and Durkee, the latter was subject to the entire risk of the market. His compensation was made to depend, not on retaining the share of grain allowed by the guaranty for his toll, but on the fluctuations in the market value. By the terms of the agreement, the plaintiffs were to deduct from the gross sales of flour and meal forwarded by Durkee, the commissions for purchasing the wheat and corn, the commissions for .selling the flour and meal, and the amount of the purchase money paid by them for the wheat and corn, and all cooperage, and other just and customary charges, and the balance, after such deductions, was to be paid over by the plaintiffs to Durkee for his services, expenses, and the use of the mill in manufacturing the flour and meal. Durkee was thus made the owner of the grain manufactured, at least so far as the consequences to himself were concerned. If this provision was not an open violation of the contract of guaranty, it was certainly a palpable evasion of it.

In *Wright* v. *Johnson*, (8 *Wend.* 512,) the defendant engaged to be accountable to any one who would advance to one Stickney any sum less than $200 at 9 or 12 months. Stickney delivered the guaranty to a creditor, in payment of a debt then due, for goods sold, amounting to $102, and in consideration of the engagement of the creditor to furnish him more goods, and to advance cash, which advances were subsequently made, so that the whole indebtedness of Stickney exceeded $200. It was held that the appropriation of the guaranty to the discharge of a previous debt, and the delivery of goods instead of money, were a departure from the terms of the guaranty, and that the guarantor was not liable.

In *Hunt* v. *Smith*, (17 *Wend.* 179,) the defendant drew an order on the plaintiff, directing him to furnish goods out of his

store to one Putnam, to the amount of seventy dollars, engaging to be accountable for such sum, and requesting the amount of the bill to be sent to him. The plaintiff furnished the goods to Putnam, to the amount of $102,81, and took his note at 30 days. It was held that the giving of credit discharged the guarantor from liability.

*Dobbin et al.* v. *Bradley*, (17 *Wend.* 422,) shows still more distinctly with what strictness the transaction must conform to the guaranty. The defendant engaged to guaranty the payment of the paper of another, *made payable at a particular bank.* It was held he was not liable on a note drawn by such party, in which no place of payment was specified, though the note had been deposited for collection in the bank specified in the guaranty, previous to its maturity, and notice thereof given to the guarantor. Bronson, J. said, " The question is not whether the conditions by which he has thought proper to qualify his liability were either reasonable or unreasonable ; nor whether they could in any way prove beneficial to the defendant. He had a right to judge of that matter for himself, and we have no authority to review his judgment."

In *Walrath* v. *Thompson*, (6 *Hill*, 540,) Johnson, wishing to purchase goods from the plaintiff, on credit, procured a letter of guaranty from the defendant, containing the following clause : " Mr. Johnson thought it would be an accommodation to him to have you wait (for payment) until the 1st of January, 1840 : if that will answer your purpose, I will be surety for the amount, to be paid at that time." The plaintiff sold Johnson the goods, but took his note for the goods, payable on the 25th of December, 1839. Johnson was not called on, however, to pay the note when due, and after January 1st, 1840, the plaintiff sued to enforce the guaranty. It was held, that inasmuch as the plaintiff had not *agreed* to wait for payment until the day proposed by the guaranty, the defendant was not liable.

These cases show how strict must be the compliance with the conditions of the guaranty, to enable the creditor to enforce it against the guarantor. In my opinion, a rule of even much less

Schermerhorn *v.* American Life Ins. and Trust Co.

strictness would exonerate the defendant from liability in the case at bar.

The judgment rendered at the circuit should be affirmed.

[ALBANY GENERAL TERM, September 6, 1852. *Parker*, *Wright* and *Harris*, Justices.]