SWIFT & CO., Limited, v. JONES.

(Circuit Court, E. D. North Carolina. February 11, 1905.)

GUARANTY—CONTRACT—NONPERFORMANCE—DISCHARGE OF GUARANTOR.

A contract employing defendant's son as plaintiff's broker, which was signed by defendant as guarantor, required that the son should give a fidelity bond in such sum, and with such company as surety, as plaintiff should designate; plaintiff to pay the premium. Plaintiff sent the son a blank application for a bond, in a company selected by it, which he properly executed and returned to plaintiff, but the latter failed to obtain the bond until after the son's defalcation. *Held*, that such bond was for the security of both plaintiff and the guarantor, and that plaintiff's failure to obtain the same discharged defendant from liability on the guaranty.

S. F. Mordecia and T. W. Bickett, for complainant.
F. S. Spruill and Wm. H. Ruffin, for defendant.

PURNELL, District Judge. The facts, which will more fully appear from the findings of the special master, to which no exceptions are filed, and which is in all respects affirmed, are, in brief, as follows:

Complainant, engaged in the packing business, entered into a contract with E. C. Jones, son of defendant, from which the following facts only need be quoted, as presenting the question at issue:

"This agreement, made this Nineteenth day of March, A. D. 1903, between Swift and Company, Limited, party of the first part, and E. C. Jones, of Louisburg, North Carolina, party of the second part:

"Witnesseth: That the said party of the first part, in consideration of certain covenants to be performed by said second party, and the guaranty of J. F. Jones, appended, hereby appoints said second party its broker for the sale of certain of its products in Louisburg, North Carolina, which appointment the said second party accepts in consideration of certain commissions to be received by said second party, the agreement being subject to the following conditions and special agreements:

"Party of the second part shall give a fidelity bond in such sum and with such company as surety as party of the first part shall designate; party of the first part to pay the premium."

On the 27th day of March, 1903, J. F. Jones, the defendant, signed the following indorsement on the contract:

"In consideration that Swift and Company, Limited, execute the foregoing agreement with E. C. Jones, I hereby guarantee the performance thereof by E. C. Jones of all the terms and conditions therein by him agreed to be kept and performed. It is understood this is a continuing guaranty."

E. C. Jones was and is insolvent, and J. F. Jones is solvent. This suit is to recover for the default of E. C. Jones against J. F. Jones, as guarantor or indorser, the sum of $2,434. Prior to the shipment of any goods, E. C. Jones made personal application in writing for the fidelity bond as provided for in the contract, and sent the same to the com-

plainant; but the bond was never given, and no notice was given J. F. Jones that the fidelity bond was not given, nor notice of any default, until an agent of the complainant was sent to "check up" after default made.

Defendant, upon these facts, claims he is not liable, and this presents the question upon which the case rests principally.

The argument based on the relationship of father and son is very touching, and, from a moral standpoint, sound, but will it stand as law? A court cannot consider such arguments as controlling. Relations, except fiduciary and the like, can have no influence, but causes must ordinarily be decided as dealing between man and man, at arm's length. This much is in reply to the argument in complainant's brief that the father was appealing to complainant "for an appointment to a responsible position, knowing he [the son] was utterly insolvent," and "that thereupon the plaintiff [complainant], in consideration of the guaranty of the father that the son will perform all the obligations of his contract, and a faithful and true account render for all goods consigned to him, appoints the son its sale agent at Louisburg, North Carolina, and consigns to him large quantities of its products." The goods not being accounted for, the complainant "makes the righteous and reasonable demand that the father save it harmless from this loss," which demand, it is said, is well founded in law and good conscience, etc. Is it so well founded? That is the question at issue. Defendant contends it is not. It is hardly necessary to go into the issues of commercial law, to discuss the liability and distinction of sureties and guarantors. This is a contract—a commercial contract—which may be construed under the rule laid down by the Supreme Court in Davis v. Wells, 104 U. S. 170, 26 L. Ed. 686, and numerous authorities cited in complainant's brief, that "it has always been held by this court that, notwithstanding the contract of guaranty is the obligation of a surety, it is to be construed as a mercantile instrument, in the furtherance of its spirit, and liberally, to promote the use and convenience of commercial intercourse." And further, in the construction of all written instruments, to ascertain the intention of the parties is the great object of the court, and this is especially the case in acting upon guarantors. Generally all instruments of suretyship are construed strictly, as mere matter of legal right. This rule is otherwise when they are founded on valuable consideration. Mauran v. Bullus, 16 Pet. 528, 10 L. Ed. 1056; Bell v. Bruen, 1 How. 185, 11 L. Ed. 89; Lawrence v. McCalmont, 2 How. 450, 11 L. Ed. 326. Applying this rule to the construction of the contract, what was the intention of the parties? It will be noted that the contract was executed by E. C. Jones on the 19th of March, and eight days thereafter the guaranty was indorsed thereon. Possibly the guarantor looked over the contract, and the first thing that caught his eye, which is the first provision of the contract, was that the factor was to give a fidelity bond, not, as is argued, at the option of the complainant, but as part of the contract to indemnify the complainant against loss, and equally for the security of the guarantor. It appears that this was then a condition precedent for the guaranty, and a fundamental provision of the contract itself. It further appears by the finding of fact that the factor, understanding this provision in

the contract, made application to the complainant, in writing, for the fidelity bond. If it was optional with the complainant, as contended, it must be presumed that it had exercised this option, and designated the company and the amount of the fidelity bond; otherwise how did the factor know how to make the application? It is found as a fact that he did make the application in writing. The burden then was on the complainant to pay the premium and secure the bond, not only for its own benefit, but for the benefit of the guarantor. This is a reasonable, legal, and equitable construction of the contract; and, having neglected to pay the premium and secure the fidelity bond, the guarantor was released from all responsibility. Brant on Suretyship & Guaranty, § 397 (2d Ed.); United States v. McIntyre (C. C.) 111 Fed. 590; Leggett v. Humphreys, 21 How. 66, 16 L. Ed. 50; United States v. Hough, 103 U. S. 73, 26 L. Ed. 305; Meyers v. Block, 120 U. S. 213, 7 Sup. Ct. 525, 30 L. Ed. 642. The law and equity on this subject is so well established that it hardly requires the citation of authorities. As said by a distinguished judge:

"He who would charge a surety for his principal's breach of contractual duty must travel without deviation the way pointed out in the contract, however iron-bound it may be, for there is for the surety, in the enforcement of his bond, no equity nor latitude beyond its strict terms."

The conclusion reached is that the failure to secure the fidelity bond as required in the contract, being a condition precedent, compliance with which the guarantor had a right to expect on the part of complainant for his protection and for the protection of complainant, thus added to his liability and absolved him.

It is therefore considered, ordered, and decreed that the bill herein be dismissed, with judgment for the costs against the complainant, to be taxed by the clerk.