## KNIGHT & JILLSON COMPANY *v.* CASTLE ET AL.

[No. 21,366. Filed March 31, 1909.]

1. CONTRACTS.—*Building.—Bonds.—Construction.—Suretyship and Guaranty.*—Building contracts and bonds to secure their performance, made primarily for the benefit of third persons, inure to their benefit, though such third persons had no knowledge thereof; and where such contracts provide for the payment for labor and materials, laborers and materialmen may sue thereon. p. 101.

2. CONTRACTS.—*Consideration.—School Buildings.—Labor and Materials.*—Where a contractor for a school building agreed that there should not be "any legal or lawful claim against the contractor * * * for work and material furnished on said work," and the surety bond provided that "the contractor shall duly perform said contract," such agreement to pay, coupled with the moral obligation that the laborers and materialmen should be paid, constitute a sufficient consideration for the contract to pay such laborers and materialmen. p. 101.

3. CONTRACTS.—*Building.—Benefit of Third Persons.—Laborers.—Materialmen.*—A contract obligating the contractors "to pay for all labor and materials used in said work when due," and a bond providing that the "contractors shall faithfully perform said contract on their part, according to the terms, covenants, and conditions thereof," are for the benefit of laborers and materialmen, and they may maintain an action for the breach thereof. pp. 103, 104.

4. CONTRACTS.— *Written.— Consideration.— Statute of Frauds.*—An obligation to pay the debt of another must arise from a written instrument. p. 104.

5. CONTRACTS.— *Building.— Bonds.— Actions.—* Where the obligee in a bond given to secure the performance of a building contract obligating the contractor to pay for labor and materials, is compelled to pay for such labor or material, he has a right of

action upon the bond for the money so paid, those performing labor or furnishing materials having a right of action on such bond in the first instance. p. 104.

6. CONTRACTS.—*Real Party in Interest.*—*Circuity of Action.*—A third person for whose benefit a written promise is made may maintain an action thereon, thus avoiding a circuity of actions. p. 105.

7. CONTRACTS.—*Bonds.*—*Building.*—*Suretyship and Guaranty.*—A bond guaranteeing the performance of a building contract providing that the contractor shall pay for labor and materials, is not merely a contract of indemnity against damages for failure to perform the contract, but is an affirmative covenant to do the things mentioned therein. p. 105.

8. CONTRACTS.—*Suretyship and Guaranty.*—*Conditions Precedent.* —*Performance.*—Where a bond guaranteeing the performance of a building contract, provides "that the surety shall be notified in writing of any act * * * which may involve a loss for which said surety is responsible hereunder, within ten days after the occurrence of such act," performance of such condition must be alleged and proved. p. 105.

9. SURETYSHIP AND GUARANTY.—*Right to Impose Conditions.*—A guarantor has the right to limit his contract liability in any manner he chooses, and the courts have no right to ignore such limitations. p. 106.

10. CONTRACTS.—*Bonds.*—*Construction.*—A bond guaranteeing the performance of a contract must be construed with such contract, and a recovery upon the bond can be upheld only where the party maintaining the action has complied with the conditions thereof. p. 107.

11. CONTRACTS.— *Building.*— *Bonds.*— *Conditions.*— *Notice of Act Causing Liability.*—*Materials.*—Where a bond provided that the surety therein, as a condition precedent to liability, should be notified within ten days of "any act * * * which may involve a loss for which said surety is responsible," and a materialman furnished lumber to the contractor whose contract was guaranteed by such bond, notice to such surety was required within ten days after the delivery of such materials, or, if time was given for payment, within ten days after the expiration thereof. p. 107.

12. SURETYSHIP AND GUARANTY.—*Conditions.*—*Breach.*—*Defense.* —Where a guarantor executes an unconditional guaranty for the performance of a contract, a breach of the guaranty constitutes a matter of defense; but where the guaranty is conditional, the performance of the conditions must be alleged and proved. pp. 108, 112.

13. SURETYSHIP AND GUARANTY.—*Liability.*—*Terms of Contract.*— A surety or guarantor can be held liable only upon the conditions prescribed by the strict terms of the contract. p. 108.

14. CONTRACTS.— *Suretyship.*— *Insurance.*— A contract of surety-ship or guaranty should be construed in veiw of its purpose, with its safeguards in favor of the surety or guarantor, and ambig-uous terms and provisions should be resolved against such surety or guarantor. p. 109.

15. CONTRACTS.—*Suretyship.*—*Notice.*—A condition in a bond given for the performance of a building contract, requiring any per-son expecting to hold the bond liable for any act to give notice to such surety within ten days after the occurrence of such act, is enforcible, being neither fraudulent nor unconscionable. p. 110.

From Shelby Circuit Court; *Will M. Sparks,* Judge.

Action by the Knight & Jillson Company against Arthur C. Castle and others. From a judgment for defendants, plain-tiff appeals. Transferred from Appellate Court under §1399 Burns 1908, Acts 1901, p. 565, §15 (see 42 Ind. App. 689). *Affirmed.*

*David L. Wilson, R. W. Harrison* and *D. P. Williams,* for appellant.

*Carson, Thompson & Dowden,* for appellees.

MYERS, J.—Appellant brought this action November 28, 1904, and appeals from a judgment, rendered upon its re-fusal to plead further, after the demurrer of the Federal Union Surety Company, for want of facts, had been sus-tained to its complaint.

It is averred that a committee from St. Joseph's Church of Shelbyville, and Castle & Convery, in April, 1903, en-tered into a written contract, by which the latter agreed to furnish the material and labor for, and to place a steam heating plant in, the church building. The contract con-tained many provisions that are not pertinent to the ques-tions involved in this action, prescribing the character of the improvement, the price, time, etc. It also contains a clause as follows:

"The parties of the second part agree to pay for all labor and materials used in said work when due, and that all labor done and materials furnished shall be of

the best quality of their several kinds, and the parties of the second part agree to deliver said building to said first party freed from all liens or rights thereto."

Thereafter said contractors, as principals, together with the appellee surety company, as surety, executed a bond in the sum of $1,800, payable to said church, as obligees, and conditioned as follows:

"Whereas said principals have entered into a written contract, dated April 24, 1903, with said obligee, for the plumbing, steam heating and electric wiring for St. Joseph Catholic Church, a copy of which contract is hereto annexed: Now, therefore, the conditions of this obligation are such that if said principals shall faithfully perform said contract on their part, according to the terms, covenants and conditions thereof (except as hereinafter provided), then this obligation shall be void, otherwise to remain in full force and effect. Provided, however, and upon the following further expressed conditions: (1) That the surety shall be notified, in writing, of any act on the part of said principals or their agents or employes which may involve a loss for which said surety is responsible hereunder, within ten days after the occurrence of said act, with a verified statement of the facts, to be delivered to the surety company at its office in the city of Indianapolis, Indiana."

Other conditions, not pertinent to this discussion, follow.

Both contract and bond are made a part of the complaint, and it is averred that appellants furnished material to said contractor which was used in said building, and for which it has not been paid. The complaint also exhibits an itemized account of such material, and avers a breach of the contract, in that Castle & Convery are now notoriously insolvent, have violated the terms of their contract, and have failed faithfully to perform the same, by refusing to pay for said material, which contract said appellee surety company had guaranteed said Castle & Convery should faithfully perform, whereby said surety company became liable for the amount of said account. The complaint also avers "that, prior to and at the time plaintiff sold and delivered the ma-

terial herein sued for to said contractor, said plaintiff had knowledge of the execution of the bond in suit, and relied upon the same to secure payment for said materials.''

We have come to adopt two rules of construction with respect to undertakings of the character of the contract and bond sued on in this case, without perhaps noting

1. carefully the distinctions in principle, as well as the distinctions between sureties, and guarantors, as applied to the particular cases. One is, that where a contract is made primarly for the benefit of a third person, such agreement inures to the benefit of such person, even though the third person at the time had no knowledge of the agreement. The other is, that a contract to pay for labor or material is a contract for the benefit of laborers and materialmen, and that upon default they may sue. In the general statement these propositions are correct, but they are to be applied with discrimination respecting each particular case. A careful examination of the cases will disclose that some loose statements have crept into some of the opinions of courts; but, as applied to the facts in the particular cases, the rulings are sound. It will be discovered that there was an express promise in the bond to pay for labor and materials (*Ochs* v. *M. J. Carnahan Co.* [1908], 42 Ind. App. 157), or the character of the work was such as to give rise to a moral obligation to pay, and the language of the bond was sufficiently explicit to make such obligation effective, or the terms of the contract were such as to make it fairly apparent that it was intended by the parties that it should operate in favor of third persons. The furthest any Indiana case which has come to our attention has apparently gone, is *Brown* v. *Markland* (1899), 22 Ind. App. 652, but, when it is considered that the work in that case was of such a character that no lien could be taken, and the further and more potent fact that the contract provided, ''neither shall

2. there be any legal or lawful claim against the contractor in any manner, from any source whatever, for

work or material furnished on said work," and the under-taking was that "the contractor shall duly perform said contract," it is at once seen that the provisions of the contract were not for the benefit of the school township, and that the clause was based upon the express agreement in the contract, and the moral obligation, that the laborers and materialmen should be paid, and that was a sufficient consideration to support the contract so far as the immediate parties to it were concerned, and it is immaterial whether a consideration moved to the guarantor, or from the third person, and it is not a strained construction to hold in such case that the undertaking that the contractor should comply with his contract was for the benefit of a third person. This is the basis for the rule in *King* v. *Downey* (1900), 24 Ind. App. 262, where there was an express condition in the bond that the contractor should pay for the material, etc. In that case liability of the guarantor was predicated on the fact that no lien could be acquired. The same thing is true as to *United States Fidelity, etc., Co.* v. *American Blower Co.* (1908), 41 Ind. App. 620. In *Hines* v. *Consolidated Coal, etc., Co.* (1902), 29 Ind. App. 563, the express terms of the obligation ran to the use and benefit of any person aggrieved by the breach of the bond. See, also, *American Surety Co.* v. *Thorn-Halliwell Cement Co.* (1899), 9 Kan. App. 8, 57 Pac. 237. The cases just cited are based upon statutory provisions, though in the case last cited the distinction was properly drawn, and the court held that where there is no express promise in the contract for payment for labor, material, etc., the general provisions of the bond guaranteeing the faithful performance of the contract would not be sufficient to authorize a recovery by third persons. In *Fitzgerald* v. *McClay* (1896), 47 Neb. 816, 66 N. W. 828, the provision of the contract was that the contractors "will pay off in full all laborers and materialmen for labor performed and material furnished, so that each and every person connected with this

contract may receive his just dues.'' The structure was a state building. A case marking the distinction is *Greenfield Lumber, etc., Co.* v. *Parker* (1902), 159 Ind. 571, where, there being no express provision,- either in the contract or bond, for payment for labor or material, it was held that a general undertaking that the contractor should perform the contract did not run to third persons, and this is the true rule and the real distinction.

The contract under consideration contains the express promise ''to pay for all labor and materials used in said work when due,'' and the provisions of the bond are 3. that the contractors shall ''faithfully perform said contract on' their part, according to the terms, covenants, and conditions thereof,'' clearly bringing the case within the rule of the adjudicated cases in this State and in many other states, that such contract and bond, taken together, constitute a contract primarily for the benefit of third persons, and that on default such third persons may maintain actions for its breach, and the rule will be found to be one inferable from the contract or bond, or both considered together. *Cleveland, etc., R. Co.* v. *Henry* (1908), 170 Ind. 94; *Russell* v. *Pittsburgh, etc., R. Co.* (1901), 157 Ind. 305, 55 L. R. A. 253, 87 Am. St. 214; *Ferris* v. *American Brewing Co.* (1900), 155 Ind. 539, 52 L. R. A. 305; *Ransdel* v. *Moore* (1899), 153 Ind. 393, 53 L. R. A. 753; *National Surety Co.* v. *Foster Lumber Co.* (1908), 42 Ind. App. 671; *Doll* v. *Crume* (1894), 41 Neb. 655, 59 N. W. 806; *Foster* v. *Leininger* (1904), 33 Ind. App. 669; *McCoy* v. *McCoy* (1903), 32 Ind. App. 38, 102 Am. St. 223; *Hines* v. *Consolidated Coal, etc., Co.* (1902), 29 Ind. App. 563; *King* v. *Downey* (1900), 24 Ind. App. 262; *Williams* v. *Markland* (1896), 15 Ind. App. 669.

Some of the cases put the proposition argumentatively, on the ground that, in that class of cases where liens cannot be acquired, it cannot be inferred as a matter of law that the

contract is for the benefit of the obligee, for the reason that it is a matter of indifference to him whether the labor or material obligations are paid; others, that the obligation must be regarded as one inuring solely to the benefit of an obligee, and for his protection as owner. Neither of these propositions is put upon the correct basis. In the former class of cases there is a moral obligation to pay, and every man would prefer that the just claims for labor and material used in the construction of his building should be paid for, and that is a sufficient consideration to support the promise; but the obligation to pay the debt of another must arise from a written agreement, or not at all. Even in case of an intention that the promise shall be for the benefit of a third person, it must still be in writing. In the second example put, it is quite manifest that where the express promise in a contract or bond, or both, is to pay for labor or material, it is not an obligation to pay the owner of the property, for nothing is owing to him, unless he has been compelled to pay to protect his property, and it must follow that the primary obligation to pay runs to those who furnish material or perform labor, and thus it will be seen that the matter resolves itself into the question of construction of the written contract. This being true, if the obligee in the bond is compelled to pay, he has his remedy on the bond; but if the materialman or laborer elects to proceed upon the bond, instead of availing himself of the lien, if he can take a lien, the guarantor is not injured, or, in cases where a lien cannot be taken, and the laborer or materialman has but the one remedy, the guarantor is not injured, so that in either event the surety is not required to do any more than he has undertaken to do, nor to do it upon any other or different condition than the one he has undertaken, so that the matter resolves itself in each case into the question of the intention of the parties, as expressed by stipulations of the written agree-

ment, and does not arise upon any implied agreement or equitable considerations. The rule is not at variance with the doctrine of *Reynolds* v. *Louisville, etc., R. Co.* (1896), 143 Ind. 579, and *Townsend* v. *Cleveland Fire Proofing Co.* (1897), 18 Ind. App. 568, when the contracts in those cases are looked to. This being true, there is no good reason why, in the avoidance of circuity of action, the third person, when he falls within the class for whose benefit, by express promise, or by the intention of the parties an agreement is made, as disclosed by the agreement, though the direct obligee be another, may not bring and maintain an action for his own benefit, under the provisions of our code authorizing suit by the real party in interest, who is construed to mean the person entitled to receive the benefits of the suit. *Copeland* v. *Summers* (1894), 138 Ind. 219; *Stevens* v. *Flannagan* (1892), 131 Ind. 122. This is the basis for the rule in *Gwinn* v. *Wright* (1908), 42 Ind. App. 597; *National Surety Co.* v. *Foster Lumber Co., supra; Doll* v. *Crume, supra.*

It is not merely a contract of indemnity against damages for failure to do a specified thing, but an affirmative covenant to do certain specified things. *Equitable Trust Co.* v. *National Surety Co.* (1906), 214 Pa. St. 159, 63 Atl. 699; *Weightman* v. *Union Trust Co.* (1904), 208 Pa. St. 449, 57 Atl. 879.

There is, however, another branch of this case upon which appellants must fail. It is expressly stipulated in the bond that the liability of the surety depends upon the condition, among others, "that the surety shall be notified, in writing, of any act on the part of said principals or their agents or employes which may involve a loss for which said surety is responsible hereunder, within ten days after the occurrence of such act, with a verified statement of the facts," etc. This is a condition precedent to a recovery, and compliance therewith must be averred and

proved. *Insurance Co. of North America* v. *Brim* (1887), 111 Ind. 281; *Railway Passenger Assur. Co.* v. *Burwell* (1873), 44 Ind. 460; *Sullivan* v. *Fraternal, etc., Union* (1901), 73 N. Y. Supp. 1094, 36 Misc. (N. Y.) 578; Frost, Guaranty Insurance, §§81, 91, 214; *Swift & Co.* v. *Jones* (1905), 135 Fed. 437; *California Sav. Bank* v. *American Surety Co.* (1892), 87 Fed. 118; *California Sav. Bank* v. *American Surety Co.* (1897), 82 Fed. 866; *Orleans, etc., R. Co.* v. *International Construction Co.* (1903), 113 La. 410, 37 South. 10; *Field* v. *Rawlings* (1844), 6 Ill. 581; *Foster* v. *Fidelity, etc., Co.* (1898), 99 Wis. 447, 75 N. W. 69, 40 L. R. A. 833; *Starr* v. *Millikin* (1899), 180 Ill. 458, 54 N. E. 328; *Electric Appliance Co.* v. *United States Fidelity, etc., Co.* (1901), 110 Wis. 434, 85 N. W. 648, 53 L. R. A. 609; *Whitsell* v. *Mebane* (1870), 64 N. C. 345; *Clay* v. *Edgerton* (1869), 19 Ohio St. 549, 2 Am. Rep. 422; *Bigelow* v. *Benton* (1852), 14 Barb. 123; *Allen* v. *Rightmere* (1823), 20 Johns. (N. Y.) *365, 11 Am. Dec. 288; *Fidelity & Casualty Co.* v. *Sanders* (1904), 32 Ind. App. 448; *Guarantee Co., etc.,* v. *Mechanics Sav. Bank, etc.* (1902), 183 U. S. 402, 22 Sup. Ct. 124, 46 L. Ed. 253. At direct variance with these cases is *Ovington* v. *Aetna Indemnity Co.* (1904), 36 Wash. 473, 78 Pac. 1021. In that case the language of the proviso is almost identical with that here involved, but we are unable to agree with that case, or the reasoning upon which it is founded.

It virtually takes from the guarantor the right to impose the conditions of its undertaking. To say that the owner, or one to whom the undertaking runs, shall not be required to give notice until an obligation is fastened upon him or his property, is to rob the contract of one of its specific conditions and render it nugatory. We are not permitted to declare what might be done in any given case by the guarantor for its protection as a favorite of the law, for that would depend upon the facts and circumstances in each particular case, but we can readily see how it might

be possible for the guarantor to protect itself, if it had notice, or at least be put in a position to enable it to make the trial, a right which it contracted for, and which we think cannot be ignored. It may be said that this is a technical objection, but not so, for it is a condition of liability, and we cannot make new contracts, or impose liabilities the parties have not contracted for, or have specifically contracted against. Even if it be said to be a technical objection, it may well be answered that the liability of a guarantor is a technical liability, a conditional liability, and a condition of the liability by express contract, over and above the general conditional liability of guarantors. They are entitled to every opportunity to protect themselves upon well-recognized principles of law, but when they couple with it a specific condition, we are not at liberty to disregard it.

The contract and bond must be construed together. The agreement to pay for material and labor when due was contained in the contract, and not in the bond, which was

10. an undertaking that the principals should "faithfully perform their contract according to the terms, covenants and conditions thereof." It is only by construing them together that appellant could have any standing to sue.

In adopting a part of the obligation as running to it, appellant was bound to adopt it according to its terms and conditions, upon the plainest principles of construc-

11. tion. In the absence of an agreement for time, the price of material purchased by the contractor was due when delivery was made; if time was given, the price was due at the expiration of the time agreed. In either event, it was peculiarly within the knowledge of appellant as to when the obligation was due which is here sought to be enforced against the surety, and there could be no adoption of so much as was favorable to appellant, and that which was for the benefit of the surety be ignored. It will be seen at once that had the surety been notified that a claim was due, it might have protected itself by notice to the church authori-

ties, and payment would necessarily have been stopped, or the surety completely released as to any sum then due the contractor, not otherwise equitably or legally pledged to some other obligation. Nor is appellant right in its contention that the failure to give notice is a matter of defense.

If the undertaking of the surety company had been 12. generally to guarantee the performance of the contract without conditions, then the failure to give notice of the breach from which damage has resulted would be a matter of defense. *Closson* v. *Billman* (1904), 161 Ind. 610; *Snyder* v. *Click* (1887), 112 Ind. 293; *Furst & Bradley Mfg. Co.* v. *Black* (1887), 111 Ind. 308; *Ward* v. *Wilson* (1885), 100 Ind. 52, 50 Am. Rep. 763; *Clay* v. *Edgerton, supra.*

But that is not the contract we have before us. Here the surety company has imposed conditions of its liability which are not unreasonable, but are for its protection, and, 13. we must presume, adapted for a lawful end; and we cannot make a new contract for the parties, or extend the liability of one or the rights of the other, and one of these conditions is that it shall be given "notice of any act which may involve a loss * * * for which the surety is responsible hereunder, within ten days after the occurrence of the act" (which we read after notice of the occurrence of the act). If, therefore, appellant seeks to avail itself of the provisions of the bond, it must do so on the conditions imposed. It is alleged in the complaint that Castle & Convery at the date the complaint was filed, November 28, 1904, "are now notoriously insolvent," and the complaint shows that the last of the material was delivered July 5, 1904, so that the failure to give notice as of an unnecessary thing, in case of insolvency, as is held in some cases, is not involved. It has been said: "He who would charge a surety for his principal's breach of contractual duty must travel without deviation the way pointed out in the contract, however ironbound it may be, for there is for the surety, in the enforce-

ment of his bond, no equity nor latitude beyond its strict terms." *Swift & Co.* v. *Jones, supra.*

No inconsiderable discussion has arisen between text-writers, and in the reported cases upon the subject, as to whether contracts of the character of the one under consideration are those of insurance or of suretyship or guaranty. In Stearns, Suretyship, §250, the author, in discussing the similarity of these contracts to insurance contracts, says: "Corporate suretyship is not a new kind of promise to pay the debt of another. It differs from private suretyship only in the fact that it rests upon somewhat better business methods and that the rights involved are more clearly and exactly defined by the parties themselves, leaving a more limited field in which to apply the equities and presumptions of the established law of suretyship. It cannot be doubted that if precisely the same contract is signed in one case by a private surety without compensation, and in the other case by a corporate surety for compensation, that the contractual relations and equities of each surety with the other parties to the contract are exactly alike."

In some cases the strict construction in favor of private sureties is not applied, but the more liberal rule of interpretation, as applied with respect to insurance contracts, is adopted. We think there is a middle ground which may be occupied with justice to all persons. In construing the contract it is not unreasonable to construe it in the light of its preparation by the obligor, with the safeguards in its favor, and to construe ambiguous language against it, following the rules applied as to insurance contracts, having in view also the rights, duties, responsibilities and functions which belong to the relation of suretyship, and stipulations which are fairly entered into, either by the compensated or gratuitous surety, should be as much for the benefit of one as the other.

This rule is fairly laid down in *Clay* v. *Edgerton, supra,* where the court said: "On this point much confusion has

doubtless arisen from a failure to discriminate between a guaranty which depends on some contingency or condition, and one which is in its terms absolute and unconditional. Where a guaranty is dependent upon some condition or contingency expressed in, or fairly implied from, the terms of the contract of guaranty, a compliance with those terms on the part of the guarantee is necessary, and must be alleged and proved in order to a recovery upon it. But where the guaranty of payment is absolute and unconditional, we are of opinion that it is not necessary, in order to make out a *prima facie* case for recovery, to aver or prove either demand or notice.''

In *Bigelow* v. *Benton, supra,* the court said: ''The contract on which this suit is brought was clearly a contract of guaranty. It was so declared upon its face, and such is its import. It was made with reference to a negotiation then pending between the plaintiffs and Durkee. The defendant prescribed the precise terms and conditions of his guaranty, and no rule is better settled than that the terms of the guaranty must be strictly complied with, or the guarantor will not be bound. It is a claim *strictissimi juris.''*

''Nothing can be clearer, both upon principle and authority, than the doctrine, that the liability of the surety is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no further. * * * He has a right to stand upon the very terms of his contract.'' Justice Story in *Miller* v. *Stewart* (1824), 9 Wheat. *680, 6 L. Ed. 189. And see *Greenfield Lumber, etc., Co.* v. *Parker, supra.*

Reading the whole of the contract and bond together, the agreement of the parties thereto is shown to be, on the point in question, that the surety company guarantees that the principal will pay all claims for material when due, provided written notice of the principal's default be given the guarantor within ten days of its occur-

rence. This is a plain stipulation of the bond, and by it the liability of the guarantor is measured, and upon it he has a right to stand. It is not ambiguous nor indefinite, and we have no right to say that the obligee or the gratuitous beneficiary did not thereby get all the protection either was entitled to expect. Neither is it a question whether the condition is reasonable or unreasonable, so long as it is not fraudulent or unconscionable.

In *Dobbin* v. *Bradley* (1837), 17 Wend. 422, Bronson, J., speaking for the court said: "The question is not whether the conditions, by which he has thought proper to qualify his liability, were either reasonable or unreasonable; nor whether they could in any way prove beneficial to the defendant. He had a right to judge of that matter for himself, and we have no authority to review his judgment."

But the condition is not an unreasonable one. The agreement was, in substance, that the principal should pay all claims when due. The condition was that written notice of default therein should be given the surety within ten days after its occurrence.

In the case of *California Sav. Bank* v. *American Surety Co.* (1898), 87 Fed. 118, appellant sued appellee upon a fidelity bond. The bond contained the following stipulation: " 'That the company shall be notified in writing, at its office in the city of New York, of any act on the part of the employe which may involve a loss for which the company is responsible hereunder, as soon as practicable after the occurrence of such act shall have come to the knowledge of the employer.' "

It was held that this condition was a material requirement, and failure to comply therewith released the surety, the court said: "It is believed that in fidelity insurance, which is of recent origin, notice of the fraudulent acts of the employe is of equal, if not greater, importance [referring to notice of loss in fire insurance cases], for the reason that prompt notification may often enable the insurer to avoid,

or secure indemnity for, losses which otherwise would be inevitable or irremediable''—citing *Riddlesbarger* v. *Hartford Ins. Co.* (1868), 7 Wall. 386, 19 L. Ed. 257, and quoting therefrom as follows: " 'The conditions in policies requiring notice of the loss to be given, and proofs of the amount to be furnished the insurers within certain prescribed periods, must be strictly complied with to enable the assured to recover. * * * The contract of insurance is a voluntary one, and the insurers have a right to designate the terms upon which they will be responsible for losses.' ''

We can see no reason why these rules do not apply with full force to the case before us. It certainly was no hardship to require the party to whom the claim was owing to give notice to the guarantor, upon whom he was relying for payment, of such liability, and thus enable the guarantor at once to take such steps as were available to secure itself from loss. The complaint avers that appellant knew of the execution of the bond before the materials were furnished, and relied upon it for protection. It therefore cannot plead ignorance of the condition, even if such a plea was available.

Appellant's right to sue is upon the theory that it is an obligee of the bond, as though named therein, and that the covenants run to it, and its right to recover is measured by the same rules as though so named. We do not hereby hold that appellant's rights could be affected by any act of any other obligee. But we do hold that, when it seeks to recover, it must show performance of all conditions on its part to be performed, or an adequate excuse therefor, neither of which facts are alleged. The first stipulation was a condition imposed upon each obligee named or unnamed who desired to hold the surety liable for a breach of said bond.

The complaint was insufficient, and the demurrer properly sustained. The judgment is affirmed.