Argued January 5, decided January 13, 1914.

# ASTORIA SOUTHERN RY. CO. *v.* PACIFIC SURETY CO.

## (137 Pac. 857.)

**Principal and Surety—Nature of Liability—Performance by Creditor.**

1. Where a surety company bond of a railroad contractor makes conditions precedent to a recovery on the bond that the railway shall perform everything required by the principal contract, and that the surety shall be immediately notified of any breach by the contractor, the railway can recover on the bond only if it performs all of the conditions of the principal contract and of the bond on its own part.

**Principal and Surety—Discharge of Surety—Neglect to Notify of Default.**

2. Where the bond of a railway contractor required the railway to give the surety company immediate notice of any breach of contract by the principal, the surety was entitled to notice of breaches by subcontractors employed by the principal with the consent of the railway.

[As to creditor's duty to surety, see note in 115 Am. St. Rep. 85.]

**Principal and Surety—Nature of Liability—Performance by Creditor.**

3. Where a railway construction contract required the railway to furnish the contractor all the lumber, iron and piling where needed, though it did not state when they were to be furnished, the railway was bound, as against a surety of the contractor, to furnish them when they were needed for the work.

**Trial—Instructions—Construction as a Whole.**

4. Charges excepted to should not be construed apart from the whole charge, and the instructions are sufficient when, as a whole, they cover all the issues properly and fairly submit the case to the jury.

**Trial—Instructions—Requests—Instructions Already Given.**

5. A trial judge may instruct the jury in his own language, and, where the charge properly covers all points at issue, he may, without error, refuse to give requested charges that state the law correctly.

**Appeal and Error—Harmless Error—Admission of Evidence.**

6. In an action on a railway contractor's bond, a straight verdict for defendant shows that any error in the admission of evidence that some of the delay in the work was caused by acts or omissions of the plaintiff was harmless, where the issue raised thereby was not submitted, and no reference to the evidence was made in the charge.

From Multnomah: Henry E. McGinn, Judge.

Department 2.    Statement by Mr. Justice Ramsey.

This is an action by the Astoria Southern Railway Company, a corporation, against the Pacific Surety Company, a corporation, and S. A. Cobb to recover from the defendants the sum of $20,000 upon a surety company bond. In the court below there was a judgment in favor of defendants, and plaintiff appeals.

Affirmed.

For appellant there was a brief over the names of *Mr. Warren E. Thomas, Mr. Lester W. Humphreys, Messrs. Chamberlain, Thomas & Kraemer* and *Messrs. Carey & Kerr,* with oral arguments by *Mr. Thomas* and *Mr. Humphreys.*

For respondent there was a brief over the names of *Mr. R. W. Wilbur, Mr. T. H. Crawford* and *Messrs. Wilbur & Spencer,* with oral arguments by *Mr. Wilbur* and *Mr. Crawford.*

Department 2.    Mr. Justice Ramsey delivered the opinion of the court.

On the 7th day of July, 1910, the plaintiff entered into a contract with the defendants S. A. Cobb for the construction of eight miles of railroad in Clatsop County. By this contract the defendant Cobb agreed to commence the work of building in 15 days from the date of the execution of said contract, and to prosecute the same with such force and means as would, in the opinion of the chief or assistant engineers of the plaintiff, insure the completion of the eight miles of road by or before the 1st day of November, 1910; said work to be at all times open to the inspection of the chief or assistant engineers of the plaintiff, and to conform to the rules and general specifications annexed to said contract. The defendant Cobb agreed not to assign or transfer said contract, or relet any of said work,

without the written assent of the plaintiff or its chief engineer, and that he should constantly superintend said work in person. The defendant Cobb agreed to progress with said work at such time or times and at such particular points, on the line of said work, as said chief or assistant engineers should direct. It was mutually agreed by said parties to said contract that if the defendant Cobb, in the opinion of the plaintiff or its chief engineer, should fail or refuse to comply with any of the stipulations contained in said contract to be performed by him, the plaintiff should have a right to cancel said contract and declare the same void, in which event said Cobb should have no claim whatever on the plaintiff for damages, compensation or percentage retained by the plaintiff, as hereinafter stated, either for material or work, but the plaintiff should have a right to take possession of and hold said material and work absolutely, and should be absolved as entirely and completely from said contract as if the same had never been made. Said contract further provided that, if the defendant Cobb should at any time neglect or refuse to progress with said work as fast as, in the opinion of said chief engineer of the plaintiff (communicated in writing to said defendant Cobb), it should be necessary for the completion by the time specified therefor by said contract, then the plaintiff might declare said contract abandoned, and the amount which was to be retained at the time out of the monthly estimates, which was to become due at the completion of the contract, should be forfeited to the plaintiff, or the plaintiff should have the right, at its option, to employ other parties to execute any part of said work, and charge the costs of the same to the defendant Cobb, to be deducted out of such retained percentage, or out of any payment that should have become due on any former estimate, or that should become due on any subsequent estimate. Said

contract further provided that whenever, in the opinion of the plaintiff, it should be necessary to stop any of the work, or to diminish the force employed, the plaintiff should have the right to do so, and the defendant Cobb should have no claim for damages, but should immediately stop the work or diminish the force, as the plaintiff should direct. Said contract provided, also, that the location of any portions of said road, as also the slopes of excavation and embankments, the lengths of sections, the grades, or the width of the roadbeds, might be altered whenever said chief engineer should consider such alteration necessary or expedient, but such alteration should not be allowed as a reason for any claim for extra compensation, and it was expressly agreed by the parties to said contract that the price to be paid per yard should cover the risk of any such changes that might operate to the disadvantage of the defendant Cobb, and that he should have the benefit of any alteration that should operate in his favor, It was further agreed by the parties to said contract that the defendant Cobb should deposit all excavations upon the road in embankments, where embankments are needed, within an extreme haul of 1,000 feet, according to the direction of the plaintiff, or said chief or assistant engineers, and that Cobb should be paid in such cases for the excavation only. It was further agreed by said contract that the defendant Cobb should deposit all surplus excavations, not needed as embankments, in such place or places as the plaintiff or its chief or assistant engineers should direct. It was also provided by said contract that the defendant Cobb should take all borrowed earth for embankments from such place or places as the plaintiff or its chief or assistant engineers should direct, and that said material should be measured in embankment, and be paid for only at embankment prices. Said contract provided, also,

that the decision of said chief engineer, on any point or matter touching said agreement should be final and conclusive between the parties thereto, and each of the parties to said contract thereby waived any and all right of action, suit or suits, or other remedy in law, or otherwise, under said contract, or arising out of the same. Said contract provided, also, that in consideration of the performance of all the stipulations contained in said contract by the defendant Cobb to be by him fulfilled and performed, and whenever said work should have been, in the opinion of said chief engineer, completely finished in every respect and performed agreeably to the various stipulations and specifications of said agreement, and said chief engineer should have furnished to the plaintiff a certificate of the fact under his hand, with his estimate of the quantities of the various kinds of work done by the defendant Cobb under said contract, which estimate should be final and conclusive between the parties to said contract, the plaintiff would pay to the defendant Cobb the sums that should be due under said contract at the rates specified in said contract. Said contract provided, also, that the plaintiff should furnish the defendant Cobb, at the locations where the same was to be used, all lumber, iron and piling to be used in building said road. Said contract provided, also, that the defendant Cobb should pay the plaintiff the sum of $100 per day for every day that should elapse after the 1st day of November, 1910, until the completion of the conditions of said contract and the work thereunder. Said contract provided, also, that in the event of any delay in the delivery of material of any description by the plaintiff, which should retard the progress of the work and hinder the defendant Cobb from completing the work within the time stipulated for the completion of the work, the plaintiff's engineer should decide as to whether, under the

circumstances, any premium or penalty should be imposed or exacted, and, if so, how much.

The defendant Cobb and the Pacific Surety Company executed to the plaintiff a bond, dated July 7, 1910, in the sum of $20,000, conditioned that, if the defendant Cobb should faithfully perform the said contract for the building of said eight miles of railroad on his part, according to the terms, covenants, and conditions thereof (except as provided in said bond), then said obligation should be null and void, otherwise to remain in full force and effect. Said bond contained the following conditions, to wit:

"(1) Notwithstanding that said contract is hereby referred to, this bond is nevertheless issued subject to the following express conditions, which shall be conditions precedent to the right of the 'owner' (the plaintiff) to recover hereunder.

"(2) The 'owner' (the plaintiff) shall keep, do and perform each and every, all and singular, the matters and things set forth and specified in said contract to be by the 'owner' kept, done and performed exclusively at the times and in the manner, as in said contract specified.

"(3) Provided, that said 'surety' shall be immediately notified of any breach of said contract by said 'principal' or of any act on the part of the said 'principal,' or his agent or employees, which may involve a loss for which the said 'surety' may be liable hereunder, immediately after the occurrence of such act shall have come to the knowledge of said 'owner' or of his duly authorized representative or representatives who shall have the supervision of the completion of the said contract; said notification must be given in writing to the president of said 'surety' at its principal office in San Francisco, California."

The amended complaint sets up said contract, for the construction of said eight miles of railroad, and also the said bond, executed by both of the defend-

ants, and then alleges *inter alia,* in substance, that the plaintiff duly performed all the conditions on its part to be performed under said contract with the defendant Cobb for the construction of said eight miles of railroad, but that the defendant S. A. Cobb has failed to perform the conditions of said contract on his part to be performed, in that on the 12th day of October, 1910, the defendant S. A. Cobb abandoned said contract and ceased operations thereunder, and notified the plaintiff, in writing, that he had, on that date, abandoned said contract and would cease operations thereunder.   The amended complaint alleges, also, in substance, that on said 12th day of October, 1910, the plaintiff, in writing, notified the defendant, the Pacific Surety Company, as provided for in said contract, of the abandonment of said contract, and of the ceasing of work thereunder by the said S. A. Cobb, and notified said defendant to at once exercise its option to assume said contract and complete the same.   The amended complaint alleges, also, in substance that the Pacific Surety Company failed to assume said contract and to complete the same, and that the plaintiff had been compelled to assume and complete said contract as provided for therein, and had notified the defendant company thereof, and that the plaintiff would hold the defendant company liable for any amount over and above the contract price, provided for in said Cobb contract, which the plaintiff might be compelled to pay, in compensation with the assumption and completion of said contract.   The amended complaint alleges, in substance, that the plaintiff had now fully completed said contract, and all the things to be done and performed thereunder, and that, in the completion of the same, the plaintiff had been compelled to pay and expend, and had paid and expended, in the completion of said contract the sum of $20,506.82, in excess of the contract price provided for by said contract, and that,

in addition thereto, the plaintiff proceeded with due diligence in completing said contract, but that the same was not completed until the 13th day of May, 1911, a period of 194 days after the time prescribed in said Cobb contract, and that, under and pursuant to the terms of said contract, the defendants became and are liable to the plaintiff in the sum of $100 per day for each day after the 1st day of November, 1910, until the completion of said contract, to wit, the sum of $19,400. As the bond sued on is only for $20,000, the plaintiff demands judgment for only that sum.

The defendant company, by its answer, denied that the plaintiff had performed the terms and conditions of the said Cobb contract on its part, and admits that Cobb failed to perform his part of said contract, and that the plaintiff on October 12, 1910, notified the defendant company of that fact, but denies on information and belief, paragraphs VII, VIII and IX of the amended complaint, with a few exceptions. The answer of the defendant company sets up two defenses. The first defense is, in substance, that the bond sued on provided, as a condition precedent to a right of the plaintiff to recover thereon from the defendant company, that the plaintiff (referred to in said bond as the "owner") shall keep, do, and perform each and every, all and singular, the matters and things set forth and specified in said (Cobb) contract to be by the plaintiff kept, done, and performed exclusively at the times and in the manner as in said contract specified, and said defendant alleged that the condition precedent of said bond was not complied with, in that under the terms of the contract set forth in paragraph III of said complaint (the Cobb contract) it was the duty of the plaintiff to furnish the defendant Cobb with all lumber, iron, and piling needed in the performance and completion of the work contemplated in said contract at the location where the same was to be used, and at

such time or times as it was required by said Cobb in order to properly carry out his contract; but, notwithstanding this duty and requirement on the part of the plaintiff, the said lumber and iron and piling were not delivered there in the quantity or within the time required, in order to carry out the said contract by the said Cobb, although the said Cobb frequently requested the said plaintiff herein to conform to the requirements of the contract aforesaid in that respect, and the defendants allege that the said default in conforming to said contract was a breach of said contract, and was a good and sufficient reason for the failure of the defendant Cobb to complete the said contract before the time required for its said completion, and made such completion within said time impossible of performance, and this failure to conform to the aforesaid requirements, as hereinabove set forth, was a failure to comply with the condition precedent of the said bond set forth in the complaint, in paragraph IV, requiring the plaintiff to perform each and every, all and singular, the matters set forth and specified in said contract. The other affirmative matter set forth in said answer is too lengthy to be set out here in full, but the substance of it is that, by the provisions of the bond sued on, the plaintiff was required to notify the defendant company at its San Francisco office of any act or default on the part of Cobb or his agents or employees which may involve a loss for which the defendant may be liable hereunder, immediately after the occurrence of such act shall have come to the knowledge of the plaintiff, or of its duly authorized representatives, who shall have the supervision of the completion of said contract, which notification was required by said bond to be in writing, and sent to the president of the defendant company at its San Francisco office. Said answer alleges, also, that compliance with said provision so to give notice is made a

condition precedent to the plaintiff's right to recover upon said bond, but that, notwithstanding said condition precedent, the defendants aver that the plaintiff did not comply with said condition, in that on the 26th day of July, 1910, the defendant Cobb, with the knowledge and consent of the plaintiff, entered into a contract with Wilson, Rector & Daley, copartners, by which said firm agreed to do the grading, excavating cutting, filling and all the other work described in said last-named contract, a copy of which is annexed to said answer, and agreed to do the same in conformity with the terms and specifications of the Cobb contract, and they further agreed to procure such force, means, men, implements, etc., as were necessary to complete said contract, within the time prescribed therein; but, notwithstanding this obligation, the said firm failed and refused, although requested to do so by Cobb, to carry out the terms of said contract, and said firm failed and neglected to procure the force, teams, means, men, etc., required for the completion of said contract within the time specified, viz., on or before November 1, 1910, and the work done by said firm was not satisfactory to the chief engineer of the plaintiff, as said work did not conform to the general rules and specifications which were furnished and which became a part of the said contract with said firm, and said firm failed in every respect to conform to said contract and provisions of said contract, and was in default, to the knowledge of the plaintiff and its chief engineer, W. S. Fortiner, and said Cobb had relied on said firm, as his subcontractors and subagents, to carry out the terms and conditions of his said contract with the plaintiff. Said answer states, also, in substance, that the plaintiff and its chief engineer had knowledge of their own shortcomings respecting the furnishing of all lumber, iron and piling required, as set forth in said Cobb contract, and that all of the foregoing stated facts, were known

to the plaintiff and its engineer and agent Fortiner on September 2, 1910, and before that date, to wit, on August 16, 1910, and at other times prior to the last-named date, up to and including September 2, 1910, and thereafter up to and including October 12, 1910; that, notwithstanding said knowledge of said breaches of said contracts (said Cobb contract and the contract with said firm), and of all the acts and omissions above referred to on the part of said Cobb and on the part of said firm, involving loss for which the defendant company might be liable, the plaintiff and its chief engineer, Fortiner, failed, neglected and refused to notify the company defendant of any of said breaches and violations of said contract, or of the said contract with said firm on the part of said S. A. Cobb, and his said subcontractors and agents aforesaid (said firm), until October 12, 1910, and the plaintiff thereby failed to comply with the condition precedent above referred to, in said bond, set out in paragraph IV of the amended complaint, etc.

The defendant Cobb filed a separate answer, denying much of the amended complaint, and alleging that the plaintiff failed to furnish him with the lumber, iron and piling substantially as pleaded in the answer of the defendant company.

The plaintiff filed replies, denying parts of the answers, mentioned *supra,* but admitting that it agreed to furnish Cobb all lumber, iron and piling at the locations where it was to be used, but alleging that the contract did not specify any *time* for the delivery of said lumber, iron or piles, and admitting that there was some slight delay in the delivery of the lumber and pilings at the times required by S. A. Cobb, claiming, however, that such delays were not sufficient to prevent Cobb's completing his contract by November 1, 1910, etc. The case was tried by a jury, and resulted in a verdict and judgment for the defendants.

The plaintiff appeals, and claims that the trial court erred in the admission of evidence, in giving certain instructions, and in refusing to give others.

The record shows that there were two main issues tried in the court below. The first was whether the plaintiff failed to comply with its part of the contract with the defendant S. A. Cobb for the construction of the eight miles of railroad. Said contract contains the following provisions: "It is understood that all lumber, iron and piling is to be furnished by the first party, at location same is to be used." It is claimed that the plaintiff did not comply with its agreement to furnish that part of the material, and that delays and losses resulted, which are a bar to the plaintiff's right of action. The other main issue that was tried in the court below was whether the plaintiff had given the defendant surety company notice of the defaults in the performance of the contract on the part of Cobb and his subcontractors and agents, as required by the surety bond sued on.

1. The bond sued on contained, *inter alia*, the following provisions:

"Notwithstanding that said contract [the Cobb contract] is hereby referred to, this bond is nevertheless issued *subject* to the following *express conditions*, which shall be *conditions precedent* to the right of the 'owner' [the plaintiff] to recover hereunder.

"(2) The 'owner' [the plaintiff] shall keep and perform each and every, all and singular, the matters and things set forth and specified, in said contract to be by the 'owner' kept, done, and performed exclusively at the times and in the manner as in said contract [the Cobb contract] specified.

"(3) Provided, that said 'surety' shall be immediately notified of any breach of said contract by said principal (Cobb), or of any act on the part of the said principal, or his agents, or employees which may involve a loss for which the surety (defendant company)

may be liable hereunder, immediately after the occurrence of such act shall have come to the knowledge of said 'owner,' or of his duly authorized representative or representatives who shall have supervision of the completion of the said contract; said notification must be given in writing to the president of said surety at its principal office in San Francisco, California.''

By the provisions of said bond cited *supra,* the performance of all of the conditions of the Cobb contract on its part by the plaintiff, and the giving of notice to the defendant company by the plaintiff of the defaults made by Cobb, or his agents or employees, in the performance of the Cobb contract, is made *a condition precedent* to a right of action upon said bond by the plaintiff. Such being the meaning of said bond, the plaintiff had no right of recovery thereon, unless it had performed said condition precedent.

7 Am. & Eng. Ency. of Law (2 ed.), page 121, says:

''Failure to perform a condition precedent is a breach of the contract. It involves the one so failing in all the consequences of a breach, deprives him of his remedies under the contract, releases the other party from liability to perform, and affords the latter a right of action against him.''

4 Ency. Pleading & Practice, page 627, says:

''A condition precedent calls for the performance of some act or the happening of some event, after the terms of the contract have been agreed upon before the contract shall take effect; that is to say, the contract is made in form, but does not become operative as a contract until some future act is performed or some subsequent event occurs.''

If the plaintiff performed all of the conditions of the Cobb contract and of the bond sued upon on its part, it was entitled to recover; otherwise not.

2. The bond required the plaintiff to give immediate notice to the defendant company of any default or breach of the contract by Cobb or his agents or employees. The plaintiff, by his amended complaint, alleges that on October 12, 1910, Cobb had failed to perform the conditions of the contract on his part, and at that time it notified the defendant company of Cobb's failure to keep his contract; but the plaintiff does not claim, in its pleadings or in its brief, that it gave the defendant company any notice of a breach of contract on the part of Cobb until October 12, 1910, and it does not claim that it, at any time, notified said defendant of any default on the part of Cobb's subcontractors, Wilson, Rector & Daley. The plaintiff says in its brief that: "Very soon after entering into this contract, Cobb sublet practically all of the work. The grading, excavating, and filling was sublet to Wilson, Rector & Daley. The bridge and trestle work was sublet to J. B. Tillotson, and there were various other subcontractors, called stationmen. This subletting was with the consent of the plaintiff." The plaintiff admits that practically all of the work was sublet with its consent. The plaintiff in its brief says, also, that: "Wilson, Rector & Daley went about their work of grading, excavating, and filling *with a small force* of men. This matter [of the small force of men] was brought to the attention of Cobb, who repeatedly promised to increase the force and equipment *to the proper strength.* Cobb on September 3, 1910, put Wilson, Rector & Daley off the work and took it over himself." Thus it appears from the plaintiff's brief that Cobb's attention was called to the inadequacy of the force of men on the work, and that he repeatedly promised to increase the force and equipment "to the proper strength." It is admitted that the plaintiff knew that the force of men on the work was not sufficient. The attention of Cobb was called to it "re-

peatedly," but it is not claimed, we believe, that the defendant company was notified of any default in the performance of the contract until October 12, 1910. In fact, no notice appears to have been given the defendant company of any breach of said contract until Cobb abandoned the contract and notified the plaintiff thereof on October 12, 1910. Cobb sublet practically all of the work of constructing the road, and most of the work that was done he did *by these subcontractors*. Legally, the failure of these subcontractors to put a sufficient force on the work, to comply with the contract for the construction of the road, was Cobb's failure, as he remained liable for the performance of the work under the contract. On August 16, 1910, Walter S. Fortiner, chief engineer of the plaintiff, wrote S. A. Cobb as follows: "You will please accept this as a formal notice to proceed forthwith to place a sufficient grading outfit on the line of the Astoria Southern Railroad Company's R. R. to insure completion of the grade within the time specified, as, if the work is not adequately covered by the 20th of August, the company will, under the terms of its contract with you, proceed to perform this work at your cost." There was abundant evidence to require the trial court to instruct the jury that the defendant company was entitled to notice of the breaches of the contract by Cobb and by his subcontractors, working under his personal supervision.

3. The other point of the defense was that the plaintiff failed to furnish Cobb and his subcontractors all the lumber, iron and piling at the points where they were needed, and *when* they were needed, as required by the contract. The plaintiff contends that the contract did not state *when* this material was to be furnished, and hence that it was not in default. But as this material was to be used by Cobb in building the road, the latter and his subcontractors were entitled to

have it delivered when it was needed as the work progressed. It was the plaintiff's duty so to deliver it. The plaintiff admitted that there was some slight delay in delivering the material. The defendants were entitled to instructions that it was the duty of the plaintiff to deliver said material when it was needed as the work progressed.

The instructions given to the jury by the trial court cover 17 pages of the printed record. They cover fully and fairly every issue made by the pleadings. We have read them carefully several times, and are satisfied that all questions at issue were fairly submitted to the jury. In one or two charges we think that the rule was stated a little more favorably to the *appellant* than it should have been. We are sure that the *appellant* has no right to complain of the instructions as a whole.

The following are the charges given by the court to which the plaintiff excepted:

"And the first question for your determination in this case is, Who breached the contract? Was it breached by the railroad company in failing to furnish the iron, lumber and piling, or was it breached by Mr. Cobb? That is the first inquiry for you in this case—that is the first inquiry which arises in this case under the statement made in the complaint that the railroad company has complied with all the conditions on its part to be complied with. Your first inquiry will be, Who breached this contract?

"Now, before there can be a recovery against the defendants, the railroad company must show upon its part it complied with all the conditions of this contract. If it has shown here that it furnished this iron, material, lumber and piling within a reasonable time—that is, the time required—there is no time mentioned in this contract when this material is to be furnished, but the law says and reads into a contract that it is to be furnished within a reasonable time—if it

was furnished within a reasonable time, why, the railroad company complied with this contract in that respect.

"Now, a reasonable time means such a time as an ordinarily prudent person would have furnished that material to Mr. Cobb along the line of the work as it progressed, and if it was furnished within a reasonable time, the railroad company complied with its contract. And if it was not furnished within a reasonable time, and as a result Mr. Cobb was prevented from completing his contract, then there was a breach on the part of the railroad company here.

"It cannot, however, be against the surety company yet, because it was necessary for you to take one step further. Was there upon the part of the railroad company, or its representatives, a failure to notify the home office at San Francisco, California, of a breach of the contract on the part of Wilson, Rector & Daley, or of a breach of the contract upon its own part, or a failure to furnish the iron, lumber and piling? In order to answer this question, you must consider in this case that the defendant is a compensated surety company; that it is entitled to rely upon breaches of the contract, but they must be substantial breaches and not technical breaches. They must be such breaches as would work a pecuniary discharge to the defendant, or deprive it of the protection or privilege given to it in this bond. With that in view you take this case and place yourselves mentally as near as you can about that line of work as it appeared at the time when the company became acquainted with the fact that there had been a breach in the contract of Wilson, Rector & Daley, when this notice to Mr. Walter S. Fortiner, who was the chief engineer of the railroad company, and you ask yourselves as between man and man—take all of the things into consideration and say, Would a prudent man, an ordinarily prudent man, situated as the railroad company was, have notified the surety company of the breach of Wilson, Rector &

Daley, or of any other breach they knew of? Did its failure to do so work any harm to the Pacific Surety Company, or did it deprive the Pacific Surety Company of any protection or of any privilege reserved to it in the bond? If your answer is, 'Yes, those men who represented the railway company were bound to notify the surety company of the failure of Wilson, Rector & Daley to complete this part of the contract, because it must have known that the failure of Wilson, Rector & Daley to comply with that contract which it made with Mr. Cobb would prevent Mr. Cobb from doing his work, and if the company was notified or had been notified, they might have protected themselves by something they could have done, or by the failure to give them such notice in addition they were deprived of its pecuniary effect.'

"Now, upon this other point, the defective notice, if a reasonably prudent man taking into consideration the contract, and all of these things, as well as the bond, would for the protection of the surety company have notified it of the breach of the contract by Wilson, Rector & Daley, as well as its own breach, if there was any breach, then it was the duty of the railroad company to give that notice."

4. The charges given by the trial court and set out *supra* were excepted to by the plaintiff. The court's instructions were given orally, and some of the sentences were not as carefully formed as they might have been. The charges excepted to were taken from the lengthy instructions given, and they should not be construed apart from the whole charge, of which they are only small parts. The instructions as a whole cover all the issues properly, and submitted the case to the jury fairly for the plaintiff.

In his work on Charging the Jury, Thompson says, at pages 173, 174:

"The charge is entitled to a reasonable interpretation. It is considered and construed as a whole in the

same connected way in which it was given, upon the presumption that the jury did not overlook any portion, but gave due weight to it as a whole; and this is so although it consists of clauses originating with different counsel and applicable to different phases of the evidence. And if, when so construed, it appears probable that the jury were not misled by it, the judgment will not be reversed, although its parts may be in some respects slightly repugnant to each other, or because some one of them, taken abstractly, may have been erroneous. If, therefore, a single instruction is found which states the law incorrectly and yet it is qualified by others in such a manner that the jury were probably not misled by it, it will not be ground for reversing the judgment.''

We think that, taking the charge as a whole, it states the rule in regard to the giving of notice to the defendant company of breaches of the Cobb contract a little more favorably to the plaintiff than it should have stated it.

Part of the breaches of the Cobb contract, on his part, occurred when his subcontractors Wilson, Rector & Daley were attempting to perform the contract. Their defaults were legally his. Cobb was doing the work by his subcontractors. The contract provided that he should not assign said contract or sublet any of the work without the written consent of the plaintiff. Said contract provided, also, that Cobb should constantly superintend, in person, all of said work. The plaintiff expressly consented to the subletting of said work to Wilson, Rector & Daley and other parties. As the plaintiff admits that practically all of the work was sublet with its express consent, it is obvious that the defendant company was entitled to notice of all material breaches of the contract, whether made personally by Cobb, or by his subcontractors working under his personal supervision.

5. We hold that there was no reversible error in the instructions that were given, and that as the charges given covered properly all questions at issue, the court had a right to refuse to give the charges requested by the plaintiff. A trial judge has a right to instruct the jury in his own language, and, where his charge properly covers all the points at issue, he can, without error, refuse to give requested charges that state the law correctly. We think that part of the charges requested did not state the law correctly.

6. The evidence that was admitted over the objections of the plaintiff was given to show that some of the delay in the work was caused by the acts or omissions of the plaintiff, and as there was a straight verdict for the defendants, it appears that it could not have affected the verdict. The charge of the court did not mention or refer to said evidence, and it is clear from the charge of the court that the matters referred to in said evidence were not submitted to the jury, and that the jury could not have considered them. It is not necessary to pass on the admissibility of said evidence. It was harmless.

Section 556, L. O. L., provides that cases shall be reversed only for errors substantially affecting the rights of the appellant.

We find no reversible error in the proceedings of the court below.

The judgment of the court below is affirmed.

                                        Affirmed.

Mr. Justice Bean, Mr. Justice Burnett and Mr. Justice McNary concur.

Mr. Justice Burnett and Mr. Justice Ramsey sat on the trial of this case by special assignment.