## BANKERS SURETY COMPANY *v.* WATTS.

### Opinion delivered May 17, 1915.

SURETYSHIP—BREACH OF BUILDING CONTRACT.—Defendant was surety on a building contract. The contract provided that the work should be completed on September 1, and provided a penalty for every day of delay thereafter. *Held,* the latter provision fixed the damages for a breach of the contract, and did not provide for an extension of time, and that when the plaintiff failed to notify the surety of the breach, within the time specified in the contract, that the surety was discharged from liability.

Appeal from Garland Chancery Court; *Jethro P. Henderson,* Chancellor; reversed.

STATEMENT BY THE COURT.

Samuel C. Watt instituted this action in the chancery court against the Bankers' Surety Company and Thomas J. Prichard to recover on a building contract. Several other persons filed interventions claiming liens on the building for materials furnished by them which were used in the construction of it.

On the 5th day of May, 1910, the plaintiff, Samuel C. Watt, entered into a written contract with the defendant, Thomas J. Prichard, whereby the latter was to erect for him in Hot Springs, Ark., a two-story brick veneer residence in accordance with certain plans and specifications which were made a part of the contract. The contract price was $12,910, which included $800 that the contractor was to give for a five-room cottage, which was then situated on the lots where the dwelling was to be erected.

The contract also provided that the contractor should deliver said building complete in all its parts and free from all liens and claims to the owner on or before the first day of September, 1910, under penalty for delay of ten dollars per day for each and every day after said date, during which said building should remain incompleted and unfinished.

There was a clause in the contract which provided that the owner should withhold 20 per cent of the estimate made by the architect until the final payment; and another clause provided that notice in writing should be given to the surety on the bond of any proposed change or addition to the contract in case it should involve or cost an extra expense of $500 additional to the contract price.

The Bankers' Surety Company executed a bond as surety of Prichard for the faithful performance of all the terms, covenants and conditions of the contract on his part. The first condition of the bond provided that in event of any default on the part of the principal a written statement of the particular facts showing such default and the date thereof should be delivered to the surety by registered mail within ten days after the owner of the building should learn of such default; and that the surety

should have the right within thirty days after receipt of such statement to proceed or to procure others to proceed with the performance of the contract and should be subrogated to all the rights of the principal.

Another clause of the bond provided that no claim, suit or action by reason of any default should be brought against the principal or surety after the first day of December, 1910; and that no recovery should be had for damages accruing after that date. This clause was afterward changed by extending the date to March 1, 1911.

The contractor did not finish the building by September 1, 1910, and it was not finished until some time in February, 1911, when the owner took charge of it and finished it. The contractor also failed to pay several materialmen for materials furnished to be used in the construction of it.

On November 23, 1910, the owner gave written notice to the surety that the building had not been completed by the first of September and that materialmen's liens were about to be enforced against the building. The record shows that the owner knew these facts on the first of September, 1910, but that he did not make them known to the surety until November 23, 1910. The record shows also that the surety company had no notice until November 23.

The bond given by the surety company was in the sum of $6,500.

The chancellor found in favor of the plaintiff and the defendant, Bankers' Surety Company, has appealed.

*Rector & Sawyer,* for appellant.

1.  No notice of the failure of the contractor to complete the building within the time designated was given by the owner to the surety, as required by the contract, and the surety is discharged. 79 Ark. 523; 96 S. W. 745; 125 Fed. 887; 60 C. C. A. 623; 125 Fed. 892; 103 *Id.* 427; 173 S. W. 241.

2.  There was no extension of time nor waiver. 103 Fed. 435. Mere silence is not a waiver. 112 S. W. 200; 88 Ark. 291.

*C. Floyd Huff,* for appellee.

The surety was not released, under the contract, by the failure to give notice.   79 Ark. 523; 89 Mo. App. 201; 222 U. S. 460; 231 *Id.* 474.

HART, J., (after stating the facts).   By the terms of the contract the building was to be completed September 1, 1910.   As a matter of fact, it was not completed until some time in February, 1911.   No notice of the failure of the contractor to complete the building within the designated time was given by the owner to the surety within ten days as required by the contract.   The defense of the surety company rests mainly upon this failure to give notice.

It is not claimed that the surety in fact assented to the extension of time, but it is claimed that it will be deemed to have assented thereto by the terms of the contract itself which, it is said, contemplates that additional time for the completion of the building might be granted.

Counsel bases this contention on that clause of the contract which provides for the completion of the building by the first day of September, 1910, under penalty for delay of ten dollars per day.   They contend that the contract definitely contemplated that it might be necessary to extend the time and that the surety company must be held to have contemplated it also.   In support of their contention they cite *Graham and the Title Guaranty & Surety Co.* v. *United States,* 231 U. S. 474, and *United States* v. *McMullen and Other Administrators,* 222 U. S. 460.   We do not think either of these cases sustain the position assumed by counsel.

The contract in the McMullen case provided that no extension of time was to be granted except upon the authority of the Secretary of the Navy in accordance with the terms of the contract; and the secretary granted an extension.

In the Graham case the bond in terms contemplated an extension of time and the contract provided for a waiver of the time limit.

Here the facts are essentially different. There was no provision in the contract which contemplated an extension of the time. If the payment of ten dollars per day as provided in the contract for each day of delay be construed as a penalty, as was done in the case of *Wait v. Stanton*, 104 Ark. 9, it is unenforceable and has no binding force whatever; on the other hand, if it be construed as liquidated damages it simply has the effect of the parties contracting in advance what the damages for a breach of the contract shall be. It does not have the effect of providing for an extension of time. It only fixed the measure of damages in the event the contractor committed a breach of the contract and was not justified in so doing.

When the contractor failed to complete the building by the first of September, 1910, he committed a breach of the contract; and, under the express terms of the contract, in order to hold the surety company liable it was the duty of the owner to give written notice within ten days thereafter. The object of giving this notice, as shown by the contract itself, was to enable the surety company, seasonably, to take such practical action as might minimize its loss by reason of the contractor's default.

We are of the opinion that the contractor committed a breach of the contract when he failed to complete the building on the first day of September, 1910, and that this failure constituted a default within the meaning of that word as used in the contract. It was, therefore, the duty of the owner of the building to notify the surety company of this default if he wished to hold the surety company liable for the breach of the contract. This the owner failed to do.

There is no testimony in the record tending to show that the surety company waived the giving of this notice to it; neither is there anything in the record to show that the surety company assented to the extension of the time for the completion of the building or that the failure of the contractor to finish the work on time was justified or excused by the conduct of the owner.

It follows that the decree will be reversed and the cause remanded with directions to the chancellor to dismiss the complaint for want of equity.