# THOMAS F. HUGHES v. GLOBE INDEMNITY COMPANY.[1]

## March 22, 1918.

## No. 20,713.

**Principal and surety — change in condition of bond not retroactive.**

1. A bond given by a dealer in live stock was conditioned that he should pay for each lot of stock purchased within 48 hours after delivery. After the bond had been for some time in force the obligee requested and defendant consented that it be changed to provide for payment within two weeks after delivery. *Held*, this change was not retroactive and the bond did not secure money due from sales made during the two weeks' period prior to the change.

**Same — condition as to giving notice of default valid.**

2. A provision in such a bond requiring notice within 12 hours after a default is valid. Where such notice is not given the surety is not liable.

**Same — Sunday not to be counted.**

3. Under the terms of the bond, no recovery can be had on account of a sale made while the dealer is in default more than 48 hours on previous sales. If the 48-hour period ends on Sunday, that day is not to be counted.

**Action on bond — pleading and proof — default matter of defense.**

4. Proof that such a default existed at the time of any sale is matter of defense. Plaintiff need not in the first instance negative such a default.

Action in the district court for Dakota county by the secretary of the South St. Paul Live Stock Exchange for the benefit of the creditors of Bovey & Humphreys to recover $5,000 upon defendant's bond. The facts are stated in the opinion. The case was tried before Converse, J., who made findings and as conclusions of law found that the proposed change in the bond did not have any binding force between the parties until the letter of Walter T. Lemon Company, consenting thereto, was mailed in St. Paul on January 10, 1916, and that from the time of such

[1]Reported in 166 N. W. 1075.

mailing it covered only purchases subsequently made, and ordered judgment in favor of defendant. From so much of an order as denied his motion to amend the findings and conclusions or for a new trial, plaintiff appealed. Reversed.

*Moore, Oppenheimer & Peterson,* for appellant.

*Morphy, Bradford & Cummins,* for respondent.

HALLAM, J.

Bovey & Humphreys were live stock dealers at South St. Paul. They bought of members of the South St. Paul Live Stock Exchange. It was a rule of the exchange that dealers should settle in cash for all sales within 48 hours. Bovey & Humphreys gave a bond with defendant as surety to the secretary of the exchange for the benefit of all members of the exchange, conditioned that they should "make full payment * * * for each lot of live stock purchased, within forty-eight (48) hours after delivery thereof."

In 1915, the rules of the exchange were changed so as to require dealers to pay for stock only within two weeks after delivery. On November 19, 1915, the secretary of the exchange wrote defendant's agent, asking that its bond be changed to provide that "if the * * * principal shall make full payment * * * for each lot of live stock so purchased within two (2) weeks after the delivery thereof * * * then this bond to be void, otherwise of full force and effect."

After some negotiation, defendant's agent, on January 10, 1916, wrote the secretary that "The Globe Indemnity Company hereby agrees to this change in the bond."

On January 11, Bovey & Humphreys failed, owing some members of the exchange for purchases made during the preceding two weeks Plaintiff sued on the bond. The court found for defendant and plaintiff appealed.

1. The first question is, Did the agreed change in the bond become operative so as to cover sales of stock made during the whole two weeks' period prior to January 10? We do not think it should be so construed.

If a new bond had been written, it would not have covered obligations incurred but not matured at the date it became operative. See Bartlett v. Wheeler, 195 Ill. 445, 443, 63 N. E. 169; Dorsey v. Fidelity

& Casualty Co. 98 Ga. 456, 25 S. E. 521; Union Cent. Life Ins. Co. v. Skipper, 115 Fed. 69, 52 C. C. A. 663; Sinclair & Co. v. National Surety Co. 132 Iowa, 549, 560, 107 N. W. 184.

Neither should a change in the bond be given a retroactive effect, unless the intent that it shall so operate affirmatively appears. We find nothing indicative of such intent.

2. The bond was, at all times up to January 10, operative according to its original terms. Defendant does not claim otherwise. Some members of the exchange had claims for stock sold January 7, and on earlier days. These claims became in default 48 hours thereafter. The second section of the bond provided: "That the surety shall not be liable for any default * * * unless within twelve (12) hours from the time of such default, telegraphic notice of said default addressed to it at its home office, be left at some telegraphic office for transmission to it, or unless within such twelve (12) hours the person in charge of its office in St. Paul be personally notified of such default." The parties agreed to the provision. It is a valid one. See Grant v. North American Casualty Co. 88 Minn. 397, 93 N. W. 312; Sullivan v. Fraternal Societies' Co-op. Indemnity Union, 73 N. Y. Supp. 1094; Rorick v. Railway O. & E. Acc. Assn. 119 Fed. 63, 55 C. C. A. 369; Missouri Pac. Ry. Co. v. Western Assur. Co. 129 Fed. 610.

No notice of default was given until the evening of January 11. This notice was too late as to purchases made January 7 or earlier and no claim on the bond exists because of these purchases.

3. Money is due some members for purchases made January 10. The court found in effect that none of these were made after the consent to the change in the bond. The original bond was therefore in force when these purchases were made. The notice was timely as to these.

Another question is, however, involved. By section 6 of the bond, the surety is not liable on account of purchases made "if at the time of such purchase there shall be due to such member from the principal any sum on account of any previous purchase of live stock purchased more than forty-eight (48) hours prior thereto." This provision was without doubt violated by every member having a claim for sales made on the tenth, except in two instances. F. S. Page & Company and C. L. Kaye hold claims for sales made January 10 and had prior claims

only for sales made on January 7. January 9 was Sunday. If Sunday is to be counted in the computation of the period of 48 hours, the debts of the seventh became in default on Sunday and the sales made on Monday, the tenth, were necessarily made after default.

We think Sunday is not to be counted. Where the last day for performance of an act falls on Sunday, the general rule at common law is that Sunday is excluded and parties have until the next day to perform. Street v. United States, 133 U. S. 299, 10 Sup. Ct. 309, 33 L. ed. 631; Bowles v. Brauer, 89 Va. 466, 16 S. E. 356; State v. Green, 66 Mo. 631; Thayer v. Felt, 4 Pick. (Mass.) 354.

Some cases hold that, where the period is of hours instead of days, the hours of Sunday are to be counted. Casey v. Viall, 17 R. I. 348, 21 Atl. 911; Flagg v. Inhabitants of Millbury, 4 Cush. (Mass.) 243.

Two reasons forbid the application of such a rule here: First, in all cases of contract, the intent of the parties, where it can be ascertained, controls. Meng v. Winkleman, 43 Wis. 41. Surely the parties to this bond did not intend that these South St. Paul dealers should be on hand on Sunday to make and receive payments for Friday's purchases and to give notice to defendant in case of default. See Penniman v. Cole, 8 Metc. (Mass.) 496.

Second, the statutes seem to cover the case. Section 6010 provides that: "Bills of exchange, promissory notes, and other *contracts* payable or to be performed on Sunday * * * shall be payable or performable on the next succeeding business day," and section 9412, subd. 21, provides that, in computing the time within which an act is to be done, when the last day falls on Sunday, "the prescribed time shall be extended so as to include the first business day thereafter." We see no reason to hold that these statutes do not apply to a computation of a period of 48 hours. We hold that the 48 hour period from the time of the purchases on Friday, January 7, expired at the same hour on Monday, January 10.

4. Whether Friday's purchases were more than 48 hours old at the time of the sales on Monday, became then a question of hours. There is no evidence as to the hour of any sales. If the burden is on plaintiff to prove the negative, that no sales were made more than 48 hours before, he has failed and the decision in favor of defendant

was right. If proof that such default existed at the time of Monday's sales, is defensive matter, then defendant has failed in its defense as to these items. We think such proof is matter of defense.

Had plaintiff simply pleaded and proved the purchase on Monday, the nonpayment, and the notice to defendant, he would have made out a case. Surely he was not obliged to prove as a condition precedent that the terms of the bond had not been broken by the existence of prior defaults. See Ibs v. Hartford Life Ins. Co. 119 Minn. 113, 137 N. W. 289; Zalesky v. Fidelity & Casualty Co. of New York, 176 Iowa, 267, 157 N. W. 858; Van Arsdale-Osborne Brokerage Co. v. Riner, 51 Okl.—, 153 Pac. 859.

Defendant alleged such prior default. There are some decisions to the effect that this enlarged plaintiff's burden of proof and imposed on him the burden of disproving a breach in that particular. Koppitz-Melchers Brewing Co. v. Schultz, 68 Oh. St. 407, 67 N. E. 719: Johnson v. Mercantile Town Mut. Fire Ins. Co. 120 Mo. App. 80, 96 S. W. 697. We cannot follow these decisions. They seem to us out of harmony with well recognized principles of pleading and evidence. What defendant was obliged to plead it was obliged to prove. Brown v. Farnham, 58 Minn. 499; 60 N. W. 344; Randahl v. Lindholm, 86 Minn. 16, 89 N. W. 1129. A new trial should be had on the question whether the sales mentioned were made after default.

In justice to the trial judge, it should be said that the fact that January 9 was Sunday, does not seem to have been called to his attention. We must, however, take judicial notice of the fact, and the question of the effect of it is presented by this appeal.

Order reversed and new trial granted as to the issue above mentioned.