THE ANDES CO-OPERATIVE DAIRY COMPANY, Respondent, *v.* COMMERCIAL CASUALTY INSURANCE COMPANY, Appellant.

Third Department, November 15, 1923.

Guaranty — action on guaranty of payment of price of goods to be sold — terms of guaranty provided that written contract should be annexed — oral evidence is admissible to explain agreement — defendant is estopped from raising question that written contract was not annexed — notice of default in payment — when last day to serve notice falls on Saturday, notice cannot be served on Monday — General Construction Law, §§ 24 and 25, construed — provisions of guaranty must be strictly complied with as to service of notice of default.

In an action to recover on a contract guaranteeing the payment of the price of goods sold by the plaintiff to a third person, it appeared that the plaintiff made a written contract to sell milk to an individual; that subsequently that contract was assigned to a corporation and the defendant guaranteed the payment by that corporation of the purchase price of the milk; that the individual with whom the original contract was made is the president of the corporation to which it was assigned and is also the president of the corporation for whose benefit the guaranty in this action was given; that shipments of milk were made to the principal in the present guaranty contract by direction of its president; that the guaranty contract sued on in this case provided that a copy of the contract between the plaintiff and the principal should be annexed to the contract of guaranty; that no written contract was ever made between the plaintiff and the principal but a writing signed by the principal agreeing to pay for the milk shipped by the plaintiff was attached to the contract of guaranty and that the defendant had full knowledge of the contracts and relations between the several parties.

*Held,* that it was proper to admit oral testimony to explain the statement in the guaranty contract that there was a written contract between the principal and the plaintiff, and the defendant is estopped from raising the question of non-liability on the ground that the written contract was not annexed to the contract of guaranty inasmuch as that contract was prepared after full explanation of the relations between the parties.

The provision in the contract requiring the plaintiff to serve notice of default in payment within a certain number of days after the default was not complied

with where the last day was Saturday and the notice was not served until the Monday following. Sections 24 and 25 of the General Construction Law apply only where the last day falls on a holiday and do not apply where it falls on a half holiday.

The plaintiff must be held to a strict compliance with the provisions requiring the service of notice, and not having served the notice within the time stipulated, it cannot recover.

APPEAL by the defendant, Commercial Casualty Insurance Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Delaware on the 7th day of June, 1923, upon the verdict of a jury rendered by direction of the court.

*Arthur F. Curtis,* for the appellant.

*Barna Johnson [A. G. Patterson* of counsel], for the respondent.

McCANN, J.:

This action was brought to recover $5,000, the amount of a guaranty given by defendant, Commercial Casualty Insurance Company, to plaintiff to secure to the latter payment for milk products sold by plaintiff to the Kremo-Lac Company., Inc. The products so sold during August, 1922, amounted to $5,960.11, which amount is unpaid. On the trial the defendant claimed: (1) That no written contract within the terms of the guaranty was annexed thereto as required by said guaranty or bond, but that the plaintiff and the Kremo-Lac Company continued to do business under an oral agreement and that the defendant insurance company did not guarantee any oral contract; (2) that the provision of the guaranty requiring plaintiff to give notice of default on the part of the Kremo-Lac Company within ten days after such default was not performed by plaintiff, in that notice of default in the payment for products sold to the Kremo-Lac Company during the first half of August was not given until twelve days after default and that there was a delay of fourteen days in the notice of default as to the payment for the products sold the last half of August. Both parties moved for a direction of a verdict and the court directed a verdict for the plaintiff for $5,000, the amount of the guaranty stated in the bond.

On January 25, 1922, the plaintiff creamery company made a written contract to sell its entire product to one L. B. Samuels. On the 27th day of February, 1922, this contract was assigned by Samuels to the Independent Dairy Products Company, which company gave a bond of the defendant to the plaintiff to secure the payment of all sums due for shipments made to the Independent Dairy Products Company, under such contract so assigned. There is no evidence of any written consent upon the part of the plaintiff

to the assignment but shipments were made to the Dairy Products Company. It appears that Samuels · was the president of the Independent Dairy Products Company, and of another similar company called the Kremo-Lac Company, and shipments were made to the latter company by direction of Samuels. The plaintiff required a bond to insure the payment of sums due for shipments made to the Kremo-Lac Company, and Samuels applied to the defendant for such bond which was issued and the latter bond is the one upon which this action is brought. The bond given by the Kremo-Lac Company has a recital as follows: " Whereas, Kremo-Lac Co., Inc. has entered into a certain agreement in writing dated the         day of          , 1922, with the above named obligee [the plaintiff] wherein the obligee agrees to sell to the said Kremo-Lac Co., Inc. certain creamery products and by-products; and the said Kremo-Lac Co., Inc. agrees to pay for same, as is more specifically set forth in said contract, copy of which is or may be hereto annexed and made part hereof."

There never was a written contract made directly between the plaintiff and the Kremo-Lac Company, and no written agreement was ever attached to said bond except that it appears that at the time of the delivery of the bond to the plaintiff, a slip of paper was attached to said bond which was written on a letterhead of plaintiff, and which reads as follows:

" The Andes Co-operative Dairy Company
" Manufacturers of
" Fancy Butter and Cream.
" Andes, Delaware Co., N. Y., *May* 13, 1922.

" We agree to guarantee the payment for produce shipped us through the agency of L. B. Samuels by the Andes Co-operative Dairy Company during year 1922 and up to Apl. 1, 1923 & agree to pay for same. And the Surety Bond — bond given by us, is given as security for such payment. The agreement made by him for purchase of produce by          as our agent.

" KREMO-LAC CO. INC.
" L. B. Samuels, *Pres.*"

The theory upon which this action is maintained is that the shipments of milk to the Kremo-Lac Company were under the direction of L. B. Samuels, its president, and the same person with whom the original contract was made by the plaintiff, and that the slip attached to said bond is a contract made upon the part of the Kremo-Lac Company guaranteeing the payment for all shipments made to it; also that the bond given to which said slip or guaranty is attached, recognizes the existence of an agree-

ment between the Kremo-Lac Company and the plaintiff, when it states in the body of said bond that there had been a certain agreement in writing entered into between the Kremo-Lac Company and the plaintiff. The plaintiff's recovery must be based upon the terms of the contract with L. B. Samuels and upon the guaranty attached to the bond dated May 13, 1922, as above set forth. It appears that at the time the application was made for the bond upon which this action is brought, Mr. Samuels presented to the manager of the company at its office in New York a copy of the original contract and it also appears that the defendant had full knowledge of such contract and that the same company had written a bond given by the Independent Dairy Products Company, guaranteeing the payments under such original contract. Therefore the plaintiff claims that the surety company is estopped from asserting the defense that " no written contract within the terms of the guaranty was annexed thereto as required by the guaranty." It is clear that the plaintiff and the surety company recognized the contract in writing between the plaintiff and Samuels as the one under which shipments were to be made to the Kremo-Lac Company and to secure the performance of which the said bond was given. It is not necessary to discuss the proposition raised by the defendant that the Kremo-Lac Company had no interest in such shipments because of the fact that the contract with Samuels had been assigned by him to the Independent Dairy Products Company. It has already been stated that the consent to such assignment was not made by the plaintiff, and furthermore it appears that such shipments were actually made to the Kremo-Lac Company with the knowledge, consent and direction of the president of both companies, who, it may be said, diverted the products of plaintiff from the dairy company to the Kremo-Lac Company. It was to protect the plaintiff for shipments not made to the Independent Dairy Company, or to Samuels personally that this bond was required.

Defendant claims that there was no written contract to guarantee and that the bond cannot be extended to cover an oral contract.

Defendant, in its brief, says: " It is a rule in this State that, while a contract of guaranty which is ambiguous or doubtful as to its interpretation is to be construed so as to arrive at the intention of the parties as all other contracts are construed, yet when that intent is discovered the responsibility of the guarantor is not to be extended or enlarged by implication or construction, and the rule of *strictissimi juris* applies." (Citing *People* v. *Backus*, 117 N. Y. 196, and other cases.) Among other cases cited on defendant's brief are: *Adriance, Platt & Co.* v. *Kelley* (171 App. Div. 213);

**106** ANDES CO-OPERATIVE DAIRY CO. *v.* COMMERCIAL C. INS. CO.

Third Department, November, 1923.          [Vol. 207

*Bank of Italy* v. *Merchants National Bank* (236 N. Y. 106), and *Page* v. *Krekey* (137 id. 307). All of these are on the general proposition that where a liability is limited, the strict rule will be applied as to its enforcement and the defendant urges that this is applicable to the construction of the terms of the bond in question.

The bond stated that there was a written contract. It was necessary to produce oral testimony to show what was referred to. Such evidence was competent and necessary. Such testimony having been given, it is very clear as to what written contract was intended. It is clear that although no written contract existed between the plaintiff and the Kremo-Lac Company, there was such a contract between the plaintiff and the president of the Kremo-Lac Company under which milk products were at that time being sold to the Kremo-Lac Company.

The plaintiff cites *Powers* v. *Clarke* (127 N. Y. 417) as follows: " A contract of guaranty, as all the authorities agree, should receive a reasonable interpretation, according to the intent of the parties as disclosed by the writing, which in a case of ambiguity, may be read in the light of surrounding circumstances." (Citing various authorities.)

There is no doubt of the rule and the ambiguity in this case has been resolved by reading into the bond the provisions of the contract between the plaintiff and Samuels and the guaranty upon the part of the Kremo-Lac Company, pinned to the bond in question. It must, therefore, be held that the provisions of the bond in question have been satisfactorily explained by competent testimony, and they constitute a contract which is binding upon the company and it must also be held that the defendant is estopped from raising a question of non-liability on such ground. The bond was prepared after full explanation of the written contract under which the products were being sold; in fact, the same company had written a bond to secure the performance of the same contract for the delivery of milk to another party. The company had full knowledge of the transaction and cannot now claim that it is not obligated.

This leads us to the second point raised by the defendant, to wit, that the defendant is relieved from any obligation on account of failure to give the notice required by the bond. The written contract with Samuels under which sales were made to the Kremo-Lac Company provides that " products received to be paid for the 15th and 30th of each month so that at no time will said Samuels be more than thirty days behind in payment for products." The bond in question contains the provision that " in case of any default herein the obligee [the plaintiff] will promptly and in any event within ten days thereafter give written notice thereof to the said

surety at its office No. 128 William Street, Borough of Manhattan, City, County and State of New York."

It is quite probable that it was intended by the parties to the original contract that payments were to be made on the fifteenth and the last day of each month rather than on the fifteenth and the thirtieth, but the language of the contract is explicit and controls. Therefore, there were two dates on which indebtedness matured, one on August fifteenth and one on August thirtieth. The last day for service of a notice of default in payment for the first period was September ninth; the last day for service of a notice of default in payment for the second period was September twenty-fifth. The notice of the first default was given by telegram on September eleventh and of the second default by letter on September twenty-ninth. It does not appear when these notices reached the office of the defendant. It is claimed that the plaintiff was excused from default in service of the first notice required because of the fact that the ninth day of September was Saturday, which was a half holiday. The plaintiff claims that under the General Construction Law (§ 24, as amd. by Laws of 1909, chap. 112; Id. § 25), such being true, it was entitled to serve notice on the following Monday (the day upon which it was actually served). The plaintiff fails to note the difference recognized by law between a holiday and a half holiday. The case of *Van Orden* v. *Simpson* (90 Misc. Rep. 322), cited by both parties, is authority against the plaintiff's contention.

The important question left is whether or not the plaintiff should be held to the strict letter of the contract in its requirements that such notice shall be given " promptly and in any event within ten days thereafter." The law on this proposition varies in different jurisdictions, some holding that a paid surety is not discharged from liability on account of failure to give notice required by the written contract, unless such surety suffers a loss as a direct consequence of such failure and then only to the extent of such loss. This position is based upon the theory that it is inequitable to allow a surety to escape on such a technicality. The authorities to sustain this proposition are *Illinois Surety Co.* v. *Huber* (57 Ind. App. 408); *Republic County* v. *Guaranty Co.* (96 Kans. 255); *McClure* v. *Construction Co.* (97 id. 695); *Heffernan* v. *U. S. F. & G. Co.* (37 Wash. 477); *Lyman* v. *Title Guaranty & Surety Co.* (48 Utah, 230; 158 Pac. Rep. 423); *National Surety Co.* v. *Haley* (58 Okla. 263; 159 Pac. Rep. 292). On the contrary, there are other jurisdictions holding that the parties have a right to make such contracts and conditions as they choose, and that the law will not interfere therewith. Whether or not such conditions are material

**108** Andes Co-Operative Dairy Co. *v.* Commercial C. Ins. Co.

Third Department, November, 1923. [Vol. 207

is to be determined by the parties in the making of their agreement. (*American Indemnity Co.* v. *Board of Trustees*, 200 S. W. Rep. [Tex. Civ. App.] 592; *Bankers Surety Co.* v. *Watts*, 118 Ark. 492; 177 S. W. Rep. 20; *Knight & Jillson Co.* v. *Castle*, 172 Ind. 97; 87 N. E. Rep. 976; *National Surety Co.* v. *Long*, 125 Fed. Rep. 887; *United States F. & G. Co.* v. *Rice*, 148 id. 206; *Astoria Southern R. Co.* v. *Pacific Surety Co.*, 68 Ore. 569; 137 Pac. Rep. 857; *Beach Grove Imp. Co.* v. *Title Guaranty, etc., Co.*, 50 Ind. App. 377; *Hughes* v. *Globe Indemnity Co.*, 139 Minn. 417; 166 N. W. Rep. 1075.)

In most of the above cases damage was proved by reason of failure to give timely notice. In some cases no notice was given; however, the decisions are based upon the proposition that notice must be given as a condition precedent to the enforcement of the contract.

The general proposition is most clearly set forth in the above cases of *Knight & Jillson Co.* v. *Castle* (172 Ind. 97, 104 *et seq.;* 87 N. E. Rep. 976, 979 *et seq.*) and of *National Surety Co.* v. *Long* (125 Fed. Rep. 887). In some States there is a conflict and confusion of authorities as in Indiana. In considering the New York authorities, the plaintiff cited *Fass* v. *Illinois Surety Co.* (95 Misc. Rep. 267; affd., 177 App. Div. 596), but that case was decided upon the ground of estoppel. Plaintiff also cites *McKegney* v. *Illinois Surety Co.* (170 App. Div. 261), but that was a decision to the effect that the notice which was served on time, was binding when served at a branch instead of the main office as directed by the contract. The decision intimates that the notice should always be served within the time limit. Many of these cases hold that the contract of guaranty or suretyship, as it may be called, is in effect a contract of insurance and that in any event the same rule would apply. Such argument is good. It is a contract of insurance for the payment of indebtedness and we must resort to the decision of cases of insurance companies in order to find the rule to follow in the State of New York. A leading case in this State is *Peabody* v. *Satterlee* (166 N. Y. 174), which is a fire insurance case where proofs of loss were required within sixty days after the occurrence of the fire. Service of such notice was not made until the sixty-first day. It was held it was not a sufficient compliance with the provisions of the policy. The court said: The very question to be decided at this time is whether the plaintiff has complied with all the requirements of the policy within the time given him by its terms. If he has, he should recover, and if he has not, this court in deciding against him declares no forfeiture of his legal rights, but construes a written contract according to its plain provisions "

In the case of *Blossom* v. *Lycoming Fire Ins. Co.* (64 N. Y. 162) the fire insurance policy required notice of loss to be given within thirty days. It was held that such proof should be given as prescribed unless waived. In *Gallin* v. *Allemannia Fire Insurance Co.* (184 App. Div. 876) and in *Slocum* v. *Saratoga & Washington Fire Ins. Co.* (149 id. 867) the same rule is recognized. The leading case, however, in this State is that of *Whiteside* v. *North American Accident Ins. Co.* (200 N. Y. 320). In that case there was a policy of accident insurance which contained a provision that written notice from the assured or his representative stating the time, place and nature of his injury or death, or the commencement of his sickness, must be mailed to the secretary of the company at its home office within ten days after the date of such injury, death or commencement of such sickness, as a condition precedent to recovery. In an action on the policy to recover the sum stipulated to be paid weekly in case of sickness, the complaint alleged that during the early part of his sickness the plaintiff was delirious and unable to remember that he had said policy of insurance and had wholly forgotten that fact and later, but after the time stipulated in the policy, caused notice to be sent to the defendant of such sickness. It was held that the complaint did not set forth a cause of action in view of the facts appearing therein, concerning the failure of the assured to cause such notice to be served. I quote from the opinion as follows: " Here the parties by their free and voluntary action have entered into a contract by which each has assumed certain obligations. The insurance company has agreed to make certain payments on account of sickness, and the assured as a condition precedent to the enforcement of such obligation, has agreed to the payment of certain premiums and to the service of the notice in question, which might have been prepared and served by some one else in his behalf if he was incapacitated from personally doing it. All of these provisions and engagements enter into the substance of the contract which respondent is seeking to enforce, and under such circumstances the courts will not relieve either party under the conditions here presented from fulfillment of the engagement which he has voluntarily undertaken. This distinction between obligations imposed on a party by statute and against his will and those voluntarily assumed by him as a part of a contract, is clearly recognized by the decisions. * * * ' And when parties have made their own contract, have agreed upon their own terms and assented to certain conditions, the courts cannot change them and must not permit them to be violated or disregarded. The conditions may seem harsh and useless, but they are the result of the meeting of the minds of parties capable

in law of contracting, and if they have not been waived, or if one party has not been prevented from complying by the act of the other, all conditions must be respected and enforced.' "

A late case in this department is that of *Hammill* v. *Order of United Commercial Travelers* (178 App. Div. 338). Here the *Whiteside* case is cited and this language used: " Whatever notice was required by the contract of insurance it was essential to give, and no unforeseen contingency would excuse such notice nor can it be excused because the requirement may seem to be unreasonable."

The judgment should be reversed on the law and the complaint dismissed, with costs.

COCHRANE, P. J., H. T. KELLOGG, HINMAN and HASBROUCK, JJ., concur.

Judgment reversed on the law and complaint dismissed, with costs.