In the Matter of the Application of JACOB BARKER, Respondent, for a Peremptory Mandamus Order against WILLIAM H. SWITZER, as Inspector of Buildings of the City of New Rochelle, Appellant.

Second Department, May 2, 1924.

Municipal corporations — zoning ordinance — mandamus to compel inspector of buildings of city of New Rochelle to permit erection of building — ordinance restricting number of families per acre is not authorized by General City Law, § 20, subd. 24, and is invalid — mandamus was properly granted.

Section 12 of article 2 of the New Rochelle Zoning Ordinance of May 31, 1921, as amended, restricting the number of families that may lawfully be housed on an acre of ground or a fractional part thereof is not authorized by subdivision 24 of section 20 of the General City Law, and is invalid.

Accordingly, a peremptory mandamus order was properly granted directing the inspector of buildings of the city of New Rochelle to issue a permit to the plaintiff for the erection of a building in that city, where all provisions were complied with, with the exception of the one relating to the number of families that may be housed on an acre of ground.

APPEAL by the defendant, William H. Switzer, as inspector of buildings, from a peremptory mandamus order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 3d day of March, 1924, requiring the defendant to issue to the petitioner a permit for the erection of a building in the city of New Rochelle.

*Charles A. Van Auken,* for the appellant.

*Martin J. Tierney,* for the respondent.

KAPPER, J.:

This appeal involves the validity of a portion of the "Zoning Ordinance of the City of New Rochelle." The facts are undisputed, and the question is one of law only.

Petitioner applied to the inspector of buildings of said city for a permit to erect upon his land a three-story apartment house to contain twelve separate and distinct apartments. His application was refused upon the sole ground that his plans violated section 12 of article 2 of the "zoning ordinance." The portion of the ordinance attacked is as follows:

"§ 12. Number of families housed per acre. In an 'A' district no dwelling or tenement house shall hereafter be erected or altered to accommodate or make provision for more than ten families on

an acre of land or more than a proportional number of families on a proportional acre of land."

· The " zoning ordinance " divides the city into three classes of districts: (1) Residence districts; (2) business districts, and (3) industrial districts. It again divides or subdivides its " residence districts " into four " area districts " which are lettered " A-I," " A-II," " B " and " C," respectively, so that in the " B " and " C " districts authority is given to house not exceeding 128 families and 160 families, respectively, " on any acre of land," or not exceeding " a proportional number of families on a fractional part of any acre of land." In " A-I " districts 10 families are permitted to the acre and in " A-II " districts 20 families are permitted to the acre. The greater liberality of allowance of dwellers was intended to be compensated by the increased height and bulk of the buildings permitted in the " B " and " C " districts.

The zoning ordinance was ordained by the council of the city of New Rochelle on May 31, 1921, as amended, under and in pursuance of subdivisions 24 and 25 of section 20 of the General City Law (as added by Laws of 1917, chap. 483), section 20 having been added by chapter 247 of the Laws of 1913, known as the Home Rule Act. By subdivision 24 the city was empowered: " To regulate and limit the height and bulk of buildings hereafter erected and to regulate and determine the area of yards, courts and other open spaces, and for said purposes to divide the city into districts. Such regulations shall be uniform for each class of buildings throughout any district, but the regulations in one or more districts may differ from those in other districts. Such regulations shall be designed to secure safety from fire and other dangers and to promote the public health and welfare, including, so far as conditions may permit, provision for adequate light, air and convenience of access, and shall be made with reasonable regard to the character of buildings erected in each district, the value of land and the use to which it may be put, to the end that such regulations may promote public health, safety and welfare and the most desirable use for which the land of each district may be adapted and may tend to conserve the value of buildings and enhance the value of land throughout the city."

Subdivision 25, which authorized the city to regulate and restrict the location of trades and industries, etc., is not concerned in this litigation.

It is conceded that the petitioner's plans complied in all respects with the provisions of the zoning ordinance with reference to the height and bulk of the proposed building and with the percentage of the lot to be occupied by it, and that they also conformed to the

provisions of the building code of the city of New Rochelle. It is also conceded that petitioner's premises contained but eight-tenths of an acre of land. If the zoning ordinance limiting the number of families to an acre of ground may be upheld, it is clear that what the petitioner proposes is a violation of the ordinance, by the terms of which he was forbidden to erect a dwelling house designed to contain over eight separate and distinct apartments instead of twelve as planned. But he claims that the ordinance " is discriminatory and an unreasonable restriction to the beneficial use and free enjoyment of the said premises, which materially affects its value without making any compensation therefor," and that " the common council of the said city of New Rochelle were without power or authority to prescribe or dictate the number of families which shall be permitted to any definite area of ground." This view prevailed with the learned Special Term justice, and, we think, correctly.

It is not attempted, and, indeed, at this late day it would be idle to attempt to impair, whittle down or set at naught " zoning ordinances," which in no wise transcend constitutional limitations or the power delegated by the Legislature. Such ordinances, when ordained in pursuance of a legislative grant of power to a municipality and operating without discrimination between property owners, are a lawful exercise of police power. (*Lincoln Trust Co.* v. *Williams Building Corp.*, 229 N. Y. 313, 317.) The exercise of such power, while depending largely upon the discretion and good judgment of the municipal authorities, must nevertheless not alone be within constitutional limitations, but must find its source in the enabling act of the Legislature. " While the city is the public authority to which the Legislature has delegated the power to determine whether or not such restrictions are to be imposed and as to the character and extent of such restrictions, nevertheless the power has its limitation and the statute itself sets forth guides by which the municipality is bound." (*City of Utica* v. *Hanna*, 202 App. Div. 612.)

Therefore, taking the statute as defining the limits beyond which the city cannot go, we find that it was given the power to " regulate and limit the height and bulk of buildings hereafter erected and to regulate and determine the area of yards, courts and other open spaces, and for said purposes to divide the city into districts."

If it be said that the ordinance, in so far as it undertakes to limit the number of " families " to an acre of ground, has a real or substantial relation to the promotion of " public health, safety and welfare and the most desirable use for which the land of each

district may be adapted," it must be observed that it is only " such regulations " as are previously specified, namely, the limitation of " the height and bulk of buildings " and the determination of " the area of yards, courts and other open spaces," that are comprehended in these laudable and salutary purposes.

Whether or not it would be competent for the Legislature to enact limitations affecting the number of inhabitants in a given area in connection with " zoning " laws, need not be considered. In defining a " tenement house " the Legislature has declared it to be " the home or residence of three families or more living independently of each other, and doing their cooking upon the premises " (Tenement House Law, § 2, subd. 1, as amd. by Laws of 1912, chap. 13), and it has also placed a distinct limitation upon the number of " families " that may occupy " wooden tenement houses " (Tenement House Law, § 31); likewise has it limited the number of " families " on any one floor of a " four-family converted dwelling." (Tenement House Law, § 2, subd. 14, as added by Laws of 1919, chap. 648.) It has not, however, undertaken to prescribe the number of persons of which a " family " may consist. And, it should be added, neither does the ordinance here in question attempt to do so. If " public health, safety and welfare " were to be conduced by a limitation upon the number of " families," that purpose could hardly be subserved by such an enactment when the " family " constitutes a minimum of two persons and a maximum that ought to be indefinable. But notwithstanding the above-mentioned legislative restrictions upon an owner's use of his land, it remains that the Legislature has not authorized the municipality to enact an ordinance containing the restriction here sought to be imposed.

We are of the opinion that the ordinance, in so far as it undertakes to limit the number of families that may be housed on an acre of land, is beyond the power delegated to the city in the enabling statute, and should, therefore, be declared invalid.

The order should be affirmed, with ten dollars costs and disbursements.

RICH, MANNING and KELBY, JJ., concur; KELLY, P. J., concurs in the result.

Order affirmed, with ten dollars costs and disbursements.