In the Matter of the Application of ARLINGTON C. HALL, Petitioner, Respondent, for a Peremptory Order Pursuant to Article 78 of the Civil Practice Act, against EDWARD P. LEONARD, as Borough Superintendent of Buildings for the Borough of Bronx, Appellant.*

First Department, November 22, 1940.

* Revg. 174 Misc. 454.

*Charles C. Weinstein* of counsel [*Bernard Friedlander* with him on the brief; *William C. Chanler, Corporation Counsel*], for the appellant.

*Charles Lamb* of counsel [*Raymond B. Stringham* with him on the brief], for the respondent.

*A. Joseph Geist* of counsel [*Theodore Kadin* and *Karl Leibel* with him on the brief], for Chamber of Commerce of the Rockaways, as *amicus curiæ*.

*J. M. Richardson Lyeth* of counsel [*Robert L. Fay* with him on the brief; *Maclay, Lyeth & Williams*, attorneys], for Fieldston Property Owners Association, Inc., Henry Heide, Jr., Sidney D. Gamble, Oscar R. Ewing, Ira J. Sobol and Clarke G. Dailey, as *amici curiæ*.

UNTERMYER, J.   The petitioner is the owner of a tract of property in the borough of Bronx fronting on Spuyten Duyvil Parkway and Fieldston road which he acquired on June 6, 1938.  At that time the property was located in an " F " area district under the building zone resolution of the city of New York.  In such a district class " A " multiple dwellings could be erected.

On July 13, 1938, the city planning commission, at the instance of the Fieldston Property Owners' Association, Inc., and Fieldston, Inc., scheduled a hearing to be held on October 6, 1938, on a proposed amendment to the building zone resolution to rezone a specified area, including the petitioner's property, from an " F " district to a " G " district.  Such a change would make impossible the construction of multiple dwellings within the area by limiting the construction to dwellings intended for occupancy by single families.

The proposed amendment, specifying the boundaries of the area to be affected, and the public hearing to be held thereon were duly advertised in the *City Record.* On October 6, 1938, the public hearing was held by the city planning commission on the proposed change, the petitioner appearing in opposition thereto. On that date the hearing was concluded and the meeting of the commission was adjourned to October 11, 1938, at which time the commission adopted the proposed amendment as advertised, except that it excluded from the area to be rezoned a plot of land representing, approximately, seven-tenths of one per cent of the area originally included, which seven-tenths of one per cent, however, did not include the petitioner's property.  The amendatory resolution adopted on October eleventh was thereafter filed with the board of estimate and, if valid, became effective on November 16, 1938, under the provisions of section 200 of the New York City Charter,

no protests having been filed with the board of estimate by the owners of twenty per cent of the area affected by the change and no action disapproving the resolution having been taken by the board.

In December, 1939, the petitioner filed an application with the superintendent of buildings of the borough of Bronx for a permit authorizing the construction of a class "A" multiple dwelling on his property. The application was disapproved on January 11, 1940, on the ground that the petitioner's property was located in a " G " area district, in which only dwellings intended for occupancy by single families might be erected. Again on February 8, 1940, the defendant superintendent of buildings in identical form disapproved a second application for a permit to construct a multiple dwelling on the petitioner's property which does not appear to have differed in any respect from the earlier application which had been previously disapproved. On May 13, 1940, the petitioner instituted this proceeding to require the defendant to issue a permit for the construction of a class "A" multiple dwelling on his property and at the same time moved for a peremptory order to that effect. The superintendent then moved under section 1293 of the Civil Practice Act to dismiss the petition as insufficient in law. The order appealed from grants the petitioner's motion and directs the superintendent to approve the petitioner's plans and application and forthwith to issue the permit.

In reaching this conclusion the Special Term rejected the petitioner's contention that as matter of law the resolution was invalid on account of the omission of seven-tenths of one per cent from the area originally advertised for rezoning and held that this must be determined as an issue of fact depending upon whether under all the circumstances, the change was regarded as substantial. (*Village of Mill Neck* v. *Nolan*, 233 App. Div. 248; affd., 259 N. Y. 596; *Village of Northport* v. *Walsh*, 241 App. Div. 683; affd., 265 N. Y. 458.) The Special Term sustained the petition, however, on the ground that the creation of a single family residence district constituted an exercise of a power to regulate density of population not delegated by law to the city planning commission. The defendant's contention that the proceeding was barred by the four months' Statute of Limitations contained in section 1286 of the Civil Practice Act was overruled on the ground that a holiday said to have been declared by the mayor of the city of New York to enable city employees to attend the New York World's Fair extended the four months' period from Saturday, May 11, 1940, to the following Monday, May 13, 1940, on which date service was effected on the defendant superintendent.

We find it unnecessary to consider whether, as urged by the defendant, the board of estimate has power which it properly exercised under subdivisions 23 and 24 of section 20 of the General City Law, and section 70 of the New York City Charter, to regulate the density of population, for in our opinion the power exercised by the city planning commission was of an entirely different character. By section 200 of the New York City Charter there was delegated to the commission authority, in the first instance, to amend, repeal or add to any existing zoning resolution regulating " the location of buildings designed for specific uses or creating districts for any such purpose." It is true that a regulation limiting the number of families which may be housed in a specified area constitutes a regulation of the density of population (*Matter of Barker* v. *Switzer*, 209 App. Div. 151; *Matter of Stevens* v. *Clarke*, 216 id. 351), for such a regulation does not relate to " the location of buildings designed for specific uses " but to the number of families which may reside within the area. The resolution here does not limit the number of dwellings which may be constructed within the area but only the character of the structures to be erected therein. It is quite within the realm of possibility that numerous single family residences would, within the same area, house a greater population than a multiple dwelling. We quote from Bassett on Zoning (1940 ed.), where, referring to density of population, it is said (at p. 86): "Although the segregation of dwellings according to the number of families is recognized by the courts as lawful, yet this segregation does not necessarily have any relation to density of population. Some multi-family houses are smaller than some one-family houses. The number of families does not measure the size of the building, and therefore does not necessarily measure the density of population."

The decisions also establish that the creation of single family residence districts does not constitute an exercise of the power to regulate density of population, although it may tend indirectly to have that effect, as would a limitation of the height and bulk of buildings or the area of yards. (*Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288; *Baddour* v. *City of Long Beach*, 279 id. 167; *Buckley* v. *Baldwin*, 230 App. Div. 245; *Matter of Fox Meadow Estates, Inc.*, v. *Culley*, 233 id. 250; affd., 261 N. Y. 506.) We conclude, therefore, that the resolution of the city planning commission of October 11, 1938, approved by the board of estimate, was within the power delegated to the commission by section 200 of the New York City Charter, unless rendered invalid by the variation in area between the proposed resolution as advertised and the resolution as adopted, and the petitioner is not precluded from asserting that objection.

We think the petitioner is precluded by the four months' limitation imposed by section 1286 of the Civil Practice Act from maintaining the proceeding. The date from which the statute must be deemed to run is January 11, 1940, when his first application was disapproved. He could not by renewing the application and procuring it to be disapproved, indefinitely extend the limitation imposed by section 1286, for his right to maintain the proceeding was complete when the first application was denied. (Compare *Matter of Weinstock* v. *Hammond*, 270 N. Y. 64.) Accordingly, by the provisions of section 30 of the General Construction Law, the petitioner was required to commence the proceeding not later than Saturday, May 11, 1940 (*Andes Co-Operative Dairy Co.* v. *Commercial Casualty Insurance Co.*, 207 App. Div. 102), unless, as he contends, the four months' period was extended by the action of the mayor of the city in declaring May eleventh to be a public holiday.

We think that even if May eleventh had fallen on a public holiday, it would not have served to extend the period of time within which the proceeding might be commenced (*Ryer* v. *Prudential Ins. Co.*, 185 N. Y. 6), that period being specified in the statute in months and not in " number of days." (General Construction Law, § 20; *Aultman & Taylor Co.* v. *Syme*, 163 N. Y. 54; *Matter of Bardol*, 253 App. Div. 498.) Unlike section 25 of the General Construction Law, which relates to the performance of contractual obligations, section 30 contains no reservation excluding public holidays in the computation of time. Furthermore, May eleventh was not one of the legal holidays or half-holidays specified in section 24 of the General Construction Law. That section does not vest in the mayor of the city power to declare a public holiday postponing the operation of a statute of limitations nor is there any reason to believe that he assumed to exercise such power.

The order appealed from should be reversed, with twenty dollars costs and disbursements, the motion of petitioner denied and the motion of defendant to dismiss the petition granted.

MARTIN, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements, the motion of the petitioner denied and the motion of defendant to dismiss the petition granted.